JAMES H. HALPIN, Plaintiff, *v.* NORTH AMERICAN REFRACTORIES COMPANY, Defendant.*

City Court of New York, New York County, January 24, 1934.

* Affd. by Appellate Term.

*Bandler, Haas & Collins* [*John F. Collins* and *Harry Merwin* of counsel], for the motion.

*Spence, Hopkins & Walser* [*Paul Van Anda* of counsel], opposed.

MAX J. WOLFF, Referee. The defendant, a foreign corporation, engaged in the manufacture and sale of fire brick and clay, appears specially herein and objects to the jurisdiction of the court, contending that it is not doing business within the State and is not subject to the process of this court in an action brought against it by a resident of New York.

Defendant's home office is in Cleveland, Ohio, and it maintains factories in various parts of the United States, but none in New York. There is to be found, however, in the office building at 50 Church street, within the city of New York, a small office which bears defendant's name, and no other, upon the entrance door thereof. Defendant's name is also posted upon the bulletin board in the lobby of that building. The New York City Telephone Directory lists the defendant at the 50 Church street address. Letterheads of the defendant in use at the New York office carry defendant's Cleveland address, but contain in addition thereto the following notation, conspicuously printed in red letters: " Address reply to 50 Church Street, phone Cortlandt 7–3963, New York, N. Y."

The lease of the office in question is in the name of an employee of the defendant, one H. B. Titus. Mr. Titus testified that he is the acting district sales manager of the defendant within the State of New York, and also that he signs various communications as district representative. He testified that the defendant employs one other salesman in New York who is his subordinate, and that the two men make their headquarters at the office leased by Titus. This office is devoted entirely to defendant's business. The rent therefor is paid with funds supplied by the defendant to Titus for that purpose and for other expenditures incidental to the conduct of the office and of defendant's business. The funds are kept by Titus in a local bank in an account entitled, " H. B. Titus, Special;" the average amount on deposit is $400. The furniture in the office, of slight value, is owned by the defendant. It must be conceded that defendant's property within the State is negligible.

The salaries of Titus and the other salesman are paid by the defendant's home office. Titus and his associate salesman are employed on a salary basis and devote all their time to the business of the defendant. Titus employs a young woman stenographer and pays her out of the aforementioned " H. B. Titus, Special " account. Defendant has no other employees in New York.

Titus and his associate are constantly and systematically engaged within the State of New York in soliciting business for the defendant. Their activities result in the continuous shipment by the defendant of its product into and outside of the State of New York. It was testified by Titus that the shipments into this State attain a monthly average of approximately $14,000. Shipments are made in every case from factories without the State " f. o. b. plant."

Orders received by Titus from new customers are transmitted to the home office in Cleveland and are there accepted or rejected, presumably after due investigation of the customer's credit standing. In the case of orders received from approved accounts, that is to say, from customers who have previously done business with the defendant and whose credit standing has been found satisfactory by the defendant's home office, and who have thus established a permanent relationship with defendant's New York office, Titus promptly transmits the order to the factory, by means of a teletype machine which the defendant caused to be installed in the 50 Church street office for the use of Titus. This practice is always followed in the case of a rush order from an approved account if the amount of the order is not unusually large; and the testimony affords some reason to suppose that it is followed in the case of every normal-sized order from such an account.

As a general rule, prices are established by the Cleveland office, but Titus was sometimes authorized to quote varying prices in order to meet competition. Orders received on the basis of prices thus quoted by Titus required the approval of the home office, but were, as a matter of fact, in no instance rejected.

Defendant's customers in New York make payment directly to the Cleveland office, but when instructed to do so, Titus undertakes the collection of delinquent accounts.

The facts here outlined resemble closely those present in *Tauza* v. *Susquehanna Coal Co.* (220 N. Y. 259). The principles of that case and of *Cochran Box & Mfg. Co., Inc.,* v. *Monroe Binder Board Co.* (197 App. Div. 221; affd., 232 N. Y. 503) are controlling.

The presence of a solicitor or of an agent within the State does not subject the corporation which employs him to the jurisdiction of the State where he operates. The position of Titus, however, is of considerably greater import than that of a mere solicitor or agent

and the extended activities in which he and his associate are engaged are sufficient to subject the defendant to the processes of the courts of this State.

The controlling force of *Tauza* v. *Susquehanna Coal Co.* (*supra*) has been questioned to some extent (*e. g., Day & Co.* v. *Schiff, Lang & Co.*, 278 Fed. 533; *Halpern* v. *Pennsylvania Lumber Industries*, 137 Misc. 688). It was conceived that the State courts, in determining whether a corporation is doing business within the State, are invariably bound to follow the Federal decisions. This conception was supported in a measure by the following dictum found in *Chipman, Ltd.*, v. *Jeffery Co.* (251 U. S. 373, at p. 379): " we do not wish to be understood that the validity of such service as here involved would not be of federal cognizance whatever the decision of a state court."

However, in *Kansas City Structural Steel Co.* v. *Arkansas* (269 U. S. 148, at p. 150) it was said: " We accept the decision of the Supreme Court of Arkansas as to what constitutes the doing of business in that State within the meaning of its own laws."

In the light of *Kansas City Structural Steel Co.* v. *Arkansas* (*supra*), it is clear that each State may determine for itself whether a foreign corporation is doing business within the State within the meaning of its own laws unless assumption by the State courts of jurisdiction over the foreign corporation is so unreasonable as to come into conflict with the due process requirements of the Federal Constitution.

In the instant case the extent and nature of defendant's activities within the State are such that it is actually brought here and is properly subjected to the jurisdiction of this court. Since the due process provisions of the Federal Constitution are not involved and since there is nothing to show that the service effected upon the defendant constitutes an undue burden upon interstate commerce, no Federal question is presented and the decisions of the courts of this State should be followed.

The defendant places reliance upon. *Pennrich & ·Co., Inc.*, v. *Juniata Hosiery Mills, Inc.* (247 N. Y. 592). Examination of the record discloses that the foreign corporation in that case operated through an agent who acted on a commission basis and who sold goods, also on a commission basis, for one other manufacturer. Such an agent is not an employee of the foreign corporation but is independent thereof and his presence and activities do not bring the corporation into the State. The entrance door of the office occupied by the sales agent carried the name of the agent and of both companies he represented, and was maintained for the transaction of the business of the agent, to be distinguished from

that of the corporation, which did not, so far as appears, pay the rent or office expenses.

*Davega, Inc.*, v. *Lincoln Furniture Mfg. Co., Inc.* (29 F. [2d] 164), relied upon by the defendant, resembles *Pennrich & Co., Inc.*, v. *Juniata Hosiery Mills, Inc.* (*supra*) in the respect that the agent of the foreign corporation in the former case, as well as in the latter, "received no salary, but was only paid a commission based upon the contracts which originated through him, and not upon the amount realized." While the agent in *Davega, Inc.*, v. *Lincoln Furniture Mfg. Co., Inc.* (*supra*), like Titus, collected delinquent accounts, his collection work seems to have been voluntary or gratuitous. Titus' collection work is in the line of his regular duties as defendant's salaried employee.

HAND, C. J., writing for the court in *Davega, Inc.*, v. *Lincoln Furniture Mfg. Co., Inc.* (*supra*), said: "This is a very close case." The additional factors present in the instant case require a different conclusion than that reached in the *Davega Case* (*supra*). Even if a choice must be here made between the Federal and State court decisions, the latter will be deemed determinative. (*Kansas City Structural Steel Co.* v. *Arkansas, supra.*)

In view of the activities of defendant hereinbefore narrated, it is impossible to arrive at the conclusion that the defendant is not "doing business" within the State without wholly losing sight of the meaning ordinarily attributed to that phrase by men engaged in business. While the common understanding of the phrase is not controlling and is frequently of necessity disregarded, nevertheless, common sense suggests that it be accorded some consideration.

Not only are the defendant's employees engaged in constant activity within the State with the result that large quantities of defendant's goods are continually shipped into the State, not only are orders received here from customers who maintain a permanent relationship with defendant sent directly to the factories without the prior approval of the home office, not only are collections of delinquent accounts frequently made here by a salaried employee of the defendant, but the defendant actually has a place of business within the State. The office occupied by defendant's employees, for the exclusive use of defendant's business, maintained out of defendant's funds, must be regarded as defendant's place of business. Because of the attendant circumstances, the legalistic device of leasing the office in the name of defendant's employee is ineffective.

Accordingly, I find that the defendant is doing business within the State.

Schimmel, J.  This motion to vacate service was referred to Max J. Wolff to hear and report upon the issue as to whether the defendant, a foreign corporation, is doing business within the State.  In his opinion attached to his report, the referee has accurately stated the relevant facts established at the hearing had before him.  It clearly appears that the nature and extent of defendant's activities within the State are such that the service effected here upon its managing agent is without doubt valid under the applicable State and Federal decisions.  (*Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259; *Cochran Box & Mfg. Co., Inc.,* v. *Monroe Binder Board Co.*, 197 App. Div. 221; affd., 232 N. Y. 503; *International Harvester Co.* v. *Kentucky*, 234 U. S. 579.)

The cases, both State and Federal, cited in opposition to the confirmation of the report disclose in every instance a condition of affairs much different from that which is present here; in each of those cases the activities of the foreign corporation were not sufficiently comprehensive to bring it within the jurisdiction of the particular State; those cases are found to be not comparable to the present situation with respect either to the corporate activities or the duties and authorities of the corporate employees.

In confirming the referee's report the court adopts his opinion.