**FRENE et al. v. LOUISVILLE CEMENT CO.**

No. 8009.

United States Court of Appeals for the District of Columbia.

Decided Jan. 25, 1943.

Mr. Vincent L. Toomey, of Washington, D. C., for appellants.

Mr. George E. Hamilton, Jr., with whom Messrs. George E. Hamilton, John J. Hamilton, and Henry R. Gower, all of Washington, D. C., were on the brief, for appellee.

Before STEPHENS, EDGERTON, and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The special appeal is from a judgment quashing the service of process upon the defendant, appellee here, a Kentucky corporation.

Plaintiffs' suit for damages was founded on defendant's alleged false representations inducing them to use its product "Brixment" in constructing their residence in Washington. Brixment was represented as a waterproofed mortar or cement used in masonry work. Process was served by delivery to defendant's employee, C. E. Lovewell, within the District of Columbia. Appearing specially, defendant moved to quash the service on the ground it was not doing or transacting business within the District at or prior to the time of service, within the meaning of Section 13—103, D.C.Code 1940. After hearing upon affidavits and the testimony of Lovewell, the court made findings of fact and conclusions of law in defendant's favor and entered judgment accordingly.

The principal questions are whether Section 13—103 is applicable to the facts of this case and, if so, is valid in this applica-

tion. On the record this comes down to whether Lovewell's activities on defendant's behalf constitute "doing business" or "transacting business" within the District so as to make it amenable to process in this jurisdiction. We think the answer should be in the affirmative and the judgment should be reversed.

Section 13—103 is as follows:

"In actions against foreign corporations doing business in the District all process may be served on the agent of such corporation or person conducting its business, or, in case he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, if there be no such place of business, by leaving the same at the place of business or residence of such agent in said District, and such service shall be effectual to bring the corporation before the court.

"When a foreign corporation shall transact business in the District without having any place of business or resident agent therein, service upon any officer or agent or employee of such corporation in the District shall be effectual as to suits growing out of contracts entered into or to be performed, in whole or in part, in the District of Columbia or growing out of any tort committed in the said District." .

The facts are largely undisputed. Defendant is a Kentucky corporation. Its principal office and place of business are at Louisville in that state. It maintains no office or place of business in the District of Columbia. Defendant's business is selling cement and cement products, including Brixment. Lovewell resides in Chevy Chase, Maryland, a suburb of Washington. His telephone number, which is displayed together with his home address, his name and defendant's, upon his business card, is listed in the Washington directory. There is no evidence he or defendant has any other in this vicinity. Lovewell is a graduate engineer and uses this training in his work for the defendant, to which he devotes his entire time. He has authority to solicit orders for defendant's products, and his territory comprises all of Maryland, except the two western counties, the District of Columbia, and the eastern part of Virginia. He spends two-thirds to three-fourths of his time in Washington, which he characterizes as "the biggest market in my territory." The volume of business must be considerable in view of his statement:

"We sell quite a quantity of this material * * *. If this were a nice construction day, there would be literally hundreds of jobs going on in the District of Columbia using our material."

According to the evidence for defendant, Lovewell had no authority to conclude contracts or make binding sales. When he secured orders he forwarded them to the home office in Louisville where they were accepted or rejected. Shipments on orders accepted were made "in interstate commerce" to building supply dealers in the vicinity of the job, who in turn supplied them to contractors or other consumers. In this case the order was stimulated by Lovewell's energetic selling methods, but the shipment by defendant was to the Hudson Supply and Equipment Company, a Washington dealer, which billed and delivered the merchandise to the plaintiffs. Defendant asserts that Lovewell's authority over orders he transmits ceases with that act and his duties to the company respecting them end then.

However, it is admitted that he frequently visits jobs in course of construction where the defendant's products are being used. On these occasions he "would note the manner in which the products were being installed or used and if any difficulties were being experienced, he would make suggestions as to how to overcome them; he would also go over any complaints with regard to the materials" and report them to the home office. He had no authority finally to make adjustments or compromises. Lovewell called at the plaintiffs' house three or four times during the course of construction and "half a dozen times" at another job then being done in the District for the Government. In connection with the latter, he took specimens of the work to government agents "for testing purposes * * * to have approval by the Government." During these visits he inspected the work as it progressed, saw that the Brixment was properly mixed, was being properly spread, was being used as the defendant intended, and pointed out the values of different brick textures and bondings when used with Brixment. According to the plaintiff Leo Frene, Lovewell carefully looked over the plans and specifications for his house, "visited the work regularly while in course of construction, and pointed out minor and major details to the brickmasons." Frene also stated he knew "of many other jobs where said Lovewell has

not alone sold the Brixment, but has participated in and exhibited his engineering ability and fitness in order to promote and advance the general scheme of the work."

Lovewell testified that his employer "told me to go on the job and see how they are progressing, how they like the material, how they are satisfied with it, and so forth" and "the idea is to use my best judgment in promoting satisfactory use of this material." The record further shows that Lovewell regularly secured information for his employer from various governmental agencies and departments, including the Bureau of Standards, the Procurement Division of the Treasury Department, and the Government Printing Office. He admitted this work called upon "his engineering ability and not his sales ability," that it related in part to specific matters affecting his employer's work, such as failure of its materials to pass government specification with resulting throwback by the contractor, and that the defendant would write instructing him to check up on the matter. He was useful also in securing more general information.

All this activity subsequent to the soliciting phase of his work defendant and Lovewell say constituted no part of his duty to itself or authority granted by it. On the contrary it is said this work was done entirely on Lovewell's initiative and "with the exception of the solicitation of orders for the products of the Company he has no authority to represent said Louisville Cement Company in any wise whatsoever." Lovewell testified, in support of this view, that his work, after the sale is effected, is "just to maintain the good relations between ourselves, as a producer of a product, and the user," but this was not part of his duties to the defendant and he "did not think" it would be a breach of his employment if he should fail to visit any of "a hundred jobs going on." Uncertainty regarding this, however, is reflected variously in his testimony that the phases of his work following solicitation proper were done "only in a reporting capacity," "merely of my own discretion," and "No duty, no sir—not unless I am told to go and see the man or call on the job." The record discloses a convenient vagueness of memory when Lovewell was pressed for details concerning his actual performance of these parts of his work.

The trial court accepted defendant's view of the nature of Lovewell's activities, first, while he was testifying in response to inquiry concerning what he did in connection with a sale after it was effected, by stating: "I do not think what you do is important. It is what you are authorized and directed to do by your corporation and what they expect you to do." And in its memorandum opinion the court said that "all the duties that he performed in Washington were tied in with the matter of soliciting business," concluding that the services rendered after delivery "would not in any sense be the business of the company," since they were not *required* by it, but rather were his own work which "would help him get additional orders."

The findings of fact reflect these views, as does the conclusion of law. They are set forth in the margin.[1] In brief the

[1] "1. The defendant, the Louisville Cement Company, is a corporation incorporated under the laws of the State of Kentucky, having its principal place of business at Louisville, Kentucky. It has no office or place of business in the District of Columbia.

"2. C. E. Lovewell, the person upon whom process was served in this case, is a resident of Chevy Chase, Maryland, and is employed by the Louisville Cement Company on a salary as its representative in Maryland, Virginia and the District of Columbia, for the purpose of soliciting orders for its products; his sole employment is with the defendant and he spends about two-thirds of his time in Washington.

"3. C. E. Lovewell solicited orders in the District of Columbia only from building supply dealers. When such orders were obtained by him they were transmitted by him to the Company in Louisville, Kentucky and there accepted or rejected by the Company. The orders that were accepted were shipped in interstate commerce by the Company from Louisville to the building supply dealers. After transmitting the order to the Company in Louisville, Lovewell's authority from the Company over such orders and his duties to the Company in respect to such orders ceased. On occasions Lovewell visited jobs in the course of construction where products of the defendant Company were being used. On these occasions, he would note the manner in which the products were being installed or used and if any difficulties were being experienced, he would make

position taken by defendant and the trial court is that Lovewell's activities, including what he did in the stage of performance of defendant's obligations, constitute nothing more than "mere solicitation" of business and, under the controlling authorities,[2] this is not sufficient to bring the defendant within the reach of judicial process in a suit brought against it in personam in this jurisdiction. Implicit in this position are two subordinate, but hardly consistent propositions: first, that Lovewell's activities after the stage of solicitation proper were in themselves nothing more than the creation of good will and furtherance of good relations between defendant and its customers or the ultimate consumers of its products, and therefore were merely part of the soliciting process; second, that these activities were not required of Lovewell as part of his duties nor authorized by the defendant and hence were purely personal, not official nor representative acts on his part. The latter proposition implies that a principal is bound by the acts of his agent only when his duties require him to perform them and is not bound by any act of the agent not so required, even though it may be approved or permitted by the principal and he may regularly accept the benefits of such acts.

Section 13—103 is broad enough in its terms to include this case, unless such a construction is forbidden by the controlling authorities. We do not think it is.

I. The tradition has grown that personal jurisdiction of a foreign corporation cannot be acquired when the only basis is "mere solicitation" of business within the borders of the forum's sovereignty.[3] And

suggestions as to how to overcome them; he would also go over any complaints with regard to the materials. When a complaint was made Lovewell had no authority to adjust it; he would simply report the complaint to the defendant. This work of Lovewell in visiting jobs, making suggestions and forwarding complaints was not required in any instance by the contract of sale or the Lovewell contract of employment, but was done voluntarily by him, in accordance with an understanding he had with the defendant Company, to bring about good will and create a favorable attitude, and thus promote his work of soliciting business.

"4. The material known as Brixment which was used by plaintiffs in the construction of their home was obtained by one of the plaintiffs from the Hudson Supply and Equipment Company of Washington, D. C., and was billed by the Hudson Supply and Equipment Company of Washington, D. C., to Cora L. Frene, one of the plaintiffs, and the order was not placed with Lovewell by the plaintiffs. However, Lovewell had worked on plaintiff to get him to use Brixment in the construction of his house; and previously had invited plaintiffs' business partner and wife to a theatre and dinner in an effort to promote the use of Brixment in the Government Printing Office warehouse job. While the said Government Printing Office job was being prosecuted Lovewell had invited plaintiff to luncheons where the use of Brixment was discussed.

"From time to time, at the instruction of the defendant Company, Lovewell would attend the Bureau of Standards to observe the making of tests of materials of the Company. He also would go to other Government Departments to deliver samples of Brixment for possible use at various points in the United States; would obtain information as to invitations for bids."

"The Court concludes as a matter of law that the defendant was not engaged in doing or transacting business in the District of Columbia; that the process served upon C. E. Lovewell was not effectual to bring the defendant before the Court under Section 1537 of the Code of Laws of the District of Columbia (Title 24, Section 373)."

[2] Defendant relies chiefly on Green v. Chicago, B. & Q. R. Co., 1907, 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916; Philadelphia & R. R. Co. v. McKibbin, 1917, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710; Peoples Tobacco Co. v. American Tobacco Co., 1918, 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587; Cancelmo v. Seaboard Air Line Ry., 1926, 56 App.D.C. 225, 12 F. 2d 166; Whitaker v. MacFadden Publications, 1939, 70 App.D.C. 165, 105 F.2d 44; Peebles v. Chrysler Corp., D.C.W.D. Mo.1932, 57 F.2d 867.

[3] See Scott, Jurisdiction over Nonresidents Doing Business within a State (1919) 32 Harv.L.Rev. 871; Isaacs, An Analysis of Doing Business (1925) 25 Col.L.Rev. 1018, 1032; 18 Fletcher, Cyc. Corp. (Perm.ed.1933) § 8718; Notes (1936) 101 A.L.R. 126, (1929) 60 A.L.R. 994.

For the most recent case of this court, see Whitaker v. MacFadden Publications, 1939, 70 App.D.C. 165, 105 F. 2d 44, noted in (1940) 28 Calif.L.Rev. 227, discussed but not followed in Clements v. MacFadden Publications, D.C., E.D.Tex.1939, 28 F.Supp. 274, 276. In the Whitaker case there was no "solic-

this is true, whether the solicitation is only casual or occasional or is regular, continuous and long continued.[4]

The tradition crystallized when it was thought that nothing less than concluding contracts could constitute "doing business" by foreign corporations,[5] an idea now well exploded.[6] It is now recognized that maintaining many kinds of regular business activity constitutes "doing business" in the jurisdictional sense, notwithstanding they do not involve concluding contracts.[7] In other words, the fundamental principle underlying the "doing business" concept seems to be the maintenance within the jurisdiction of a regular, continuous course of business activities, whether or not this includes the final stage of contracting.[8] Consequently it is not clear that if, in addition to a regular course of solicitation, other business activities are carried on, such as maintaining a warehouse, making deliveries, etc., the corporation is "present" for jurisdictional purposes.[9] And very little more than "mere solicitation" is required to bring about this result.[10]

Furthermore, since the tradition crystallized, other developments in the law of personal jurisdiction have cast doubt upon its validity. These in general have expanded the scope of jurisdictional power over the persons of nonresidents, including foreign corporations. It is still true, generally speaking, that mere casual and occasional acts do not furnish a sufficient basis for assertion of jurisdiction of the person in cases of nonresidents.[11] But the nonresident motorists' statutes, which are applicable to foreign corporations,[12] and the fact they have been so widely enacted and sustained,[13] show two things among others. The first, like the cases sustaining jurisdiction upon a basis of "solicitation plus," is that contracting, casually or continuously, is not essential for jurisdictional purposes, nor is negotiation, solicitation, or other activity looking toward the formation of

itation" of business by the agent in the usual sense, but only the stimulation of the sales of an independent jobber. See Kriger v. MacFadden Publications, D.C., D.Md.1941, 38 F.Supp. 472; Cannon v. Time, Inc., 4 Cir., 1940, 115 F.2d 423.

[4] E. g., Peoples Tobacco Co. v. American Tobacco Co., 1918, 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas.1918C, 537; Mas v. Owens-Illinois Glass Co., D.C., E.D.Va.1940, 34 F.Supp. 415, 419. For cases holding that a continuous and systematic course of business through solicitation is sufficient, see, e. g., American Asphalt Roof Corp. v. Shankland, 1928, 205 Iowa 862, 219 N.W. 28, 60 A. L.R. 986; International Shoe Co. v. Lovejoy, 1934, 219 Iowa 204, 257 N.W. 576, 101 A.L.R. 122; cf. International Harvester Co. of America v. Commonwealth of Kentucky, 1914, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; Tauza v. Susquehanna Coal Co., 1917, 220 N.Y. 259, 115 N.E. 915; Halpin v. North American Refractories Co., 1934, 151 Misc. 764, 272 N.Y.S. 393.

[5] But see Carroll Electric Co. v. Freed-Eisemann Radio Corp., 1931, 60 App. D.C. 228, 50 F.2d 993; International Harvester Co. v. Commonwealth of Kentucky, 1914, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479.

[6] International Harvester Co. v. Kentucky, 1914, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479.

[7] Hoffman v. Washington-Virginia Ry. Co., 1916, 44 App.D.C. 418; International Harvester Co. v. Commonwealth of

Kentucky, 1914, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; Board of Trade of City of Chicago v. Hammond Elevator Co., 1905, 198 U.S. 424, 25 S.Ct. 740, 49 L.Ed. 1111; International Shoe Co. v. Lovejoy, 1934, 219 Iowa 204, 257 N.W. 576, 101 A.L.R. 122.

[8] See note 18 infra.

[9] Ibid.

[10] E. g., Toledo Computing Scale Co. v. Miller, 1912, 38 App.D.C. 237; Carroll Electric Co. v. Freed-Eisemann Radio Corp., 1931, 60 App.D.C. 228, 50 F.2d 993; International Harvester Co. v. Commonwealth of Kentucky, 1914, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479.

[11] Hoffman v. Washington-Virginia Ry. Co., 1916, 44 App.D.C. 418, 424; 18 Fletcher, Cyc.Corp. (Perm.Ed.1933) § 8715.

[12] See, e. g., Jones v. Pebler, 1939, 371 Ill. 309, 20 N.E.2d 592, 125 A.L.R. 451; Bischoff v. Schnepp, 1930, 139 Misc. 293, 249 N.Y.S. 49; Alexander v. Bush, 1939, 199 Ark. 562, 134 S.W.2d 519; cf. Wood v. Wm. B. Reilly & Co., D.C.N.D.Ga. 1941, 40 F.Supp. 507, (1942) 30 Geo. L. J. 311; Brown v. Cleveland Tractor Co., 1933, 265 Mich. 475, 251 N.W. 557, (1934) 34 Col.L.Rev. 950; Note (1942) 30 Geo. L.J. 768, 770.

[13] Hess v. Pawloski, 1927, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091; Culp, Process in Actions Against Non-Resident Motorists (1934) 32 Mich.L.Rev. 325; Notes (1942) 138 A.L.R. 1464, (1940) 125 A.L.R. 457, (1935) 96 A.L.R. 594, (1933) 82 A.L.R. 768.

contracts. The second is that some casual or even single acts done within the borders of the sovereignty may confer power to acquire jurisdiction of the person, provided there is also reasonable provision for giving notice of the suit in accordance with minimal due process requirements.[14] Other instances may be noted. Old notions concerning want of power over nonresident partners and partnerships have been modified or discarded.[15] New forms of service have been invented and sustained.[16] In general the trend has been toward a wider assertion of power over nonresidents and foreign corporations than was considered permissible when the tradition about "mere solicitation" grew up.

Although a wide breach has been made by the nonresident motorists' statutes, the principle probably still holds generally that merely casual or occasional acts, not constituting a regular or continuous course of business, are not sufficient to sustain personal jurisdiction over nonresidents or foreign corporations. But when jurisdiction has been extended to include some types or kinds of occasional acts and nearly all kinds of continuous operations, the rule which nullifies judicial power when a foreign corporation engages continuously and regularly in "mere solicitation" is, to say the least, anomalous.[17] Solicitation

plus maintaining an office is sufficient.[18] Solicitation plus maintaining a warehouse likewise sustains jurisdiction.[19] Solicitation plus making deliveries, collections and handling claims, has like effect.[20] Solicitation without these additional activities, or any of them, may be more sustained, more insistent, more productive of business than it is with them. Solicitation is the foundation of sales. Completing the contract often is a mere formality when the stage of "selling" the customer has been passed. No business man would regard "selling," the "taking of orders," "solicitation" as not "doing business." The merchant or manufacturer considers these things the heart of business. It is perfectly possible, under the "mere solicitation" rule, for a foreign corporation to confine its entire market to a single jurisdiction, yet by carefully limiting its activities there to the soliciting phase, to force each of its customers having cause for legal redress to seek it in the foreign forum of incorporation. By careful segregation of the "selling" phase in the place of market, a substantially complete immunity to liability, in the practical sense, could be created.

It would seem, therefore, that the "mere solicitation" rule should be abandoned when the soliciting activity is a regular, continuous and sustained course of business,

---

14 Cf. Milliken v. Meyer, 1940, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357, (1941) 41 Col.L.Rev. 724; Howard Converters, Inc., v. French Art Mills, Inc., 1937, 273 N.Y. 238, 7 N.E.2d 115, (1938) 38 Col.L.Rev. 340; Note (1936) 20 Minn.L.Rev. 649; Culp, Constitutional Problems Arising from Service of Process on Foreign Corporations (1935) 19 Minn.L.Rev. 375.

15 As in the nonresident motorists' statutes referred to above, the so-called "common-name" statutes, illustrated by the Colorado Act involved in East Denver Municipal Irrigation District v. Doherty, D.C.S.D.N.Y.1923, 293 F. 804; and various other types of statute for acquiring jurisdiction over partnerships or unincorporated associations and their members. The statutes are collected and discussed in Warren, Corporate Advantages Without Incorporation (1929) 141, 523. See also Sturges, Unincorporated Associations as Parties to Actions (1924) 33 Yale L.J. 382.

See also Note (1940) 2 Wash. & Lee L. Rev. 75; Culp, Process in Actions Against Non-Residents Doing Business Within a State (1934) 32 Mich.L.Rev. 909.

16 See, e. g., N. Y. Civil Practice Act § 235, Howard Converters, Inc., v. French Art Mills, Inc., 1937, 273 N.Y. 238, 7 N.E.2d 115, (1938) 38 Col.L.Rev. 340; N. Y. Civil Practice Act § 229b, (1940) 53 Harv.L.Rev. 1061, (1940) 40 Col.L. Rev. 1105.

17 E. g., Davidson v. Henry L. Doherty & Co., 1932, 214 Iowa 739, 241 N.W. 700, 91 A.L.R. 1308; Henry L. Doherty & Co. v. Goodman, 1935, 294 U.S. 623, 55 S.Ct. 553, 79 L Ed. 1097; Note (1940) 2 Wash. & Lee L.Rev. 75, 81, (1933) 18 Iowa L. Rev. 257.

18 Toledo Computing Scales Co. v. Miller, 1912, 38 App.D.C. 237; Tauza v. Susquehanna Coal Co., 1917, 220 N.Y. 259, 115 N.E. 915; Halpin v. North American Refractories Co., 1934, 151 Misc. 764, 272 N.Y.S. 393; 18 Fletcher, Cyc. Corp. (Perm.Ed.1933) § 8717. But see Cancelmo v. Seaboard Air Line Ry., 1926, 56 App.D.C. 225, 12 F.2d 166.

19 Ibid.

20 E. g., Toledo Computing Scales Co. v. Miller, 1912, 38 App.D.C. 237; International Harvester Co. v. Commonwealth of Kentucky, 1914, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479.

as it is in this case.[21] It constitutes, in the practical sense, both "doing business" and "transacting business," and should do so in the legal sense. Although the rule has not been clearly and expressly repudiated by the Supreme Court, its integrity has been much impaired by the decisions which sustain jurisdiction when very little more than "mere solicitation" is done.[22]

II. But it is not necessary to take the final step in repudiation in this case, since the facts are sufficient to bring it within the "solicitation plus" rule. Lovewell's activities on behalf of defendant were not limited to "mere solicitation." He was not *required* by his original authorization to do more than this. But he did more, did it regularly, and did it with defendant's knowledge, consent and approval. He not only solicited and forwarded orders. He visited the jobs where defendant's product was being used, made suggestions for solving difficulties which arose in its use, received complaints, forwarded them to the home office and, while he had no authority to make final settlements or contractual adjustments, aided generally both in preventing and in clearing up misunderstandings and difficulties arising in the course of performance of defendant's contracts. While this additional activity was not formally required of him, it was authorized, if in no other way, by defendant's acquiescence and continued acceptance of the benefit of his efforts in these respects.

■ The record, however, shows more than acquiescence, approval and acceptance of benefits by defendant. Lovewell testified that in some instances defendant expressly instructed him to visit specific jobs where its product was being used and to assist in straightening out whatever complications had arisen or might arise. Apparently this happened repeatedly and Lovewell considered this work a part of his employment when he was so instructed. His testimony also confirmed his authority to engage in these activities, when he said he did them "in a reporting capacity," though it also disclosed he did much more than report. Lovewell's acts beyond the stage of solicitation proper were therefore not unauthorized. In circumstances such as we have here, the test of an agent's authority is not found, as defendant and the trial court assumed, in the inquiry whether he is *required* to do the questioned act by the formal instructions of the principal or his failure to do it would be a breach of his duty to the employer. It is rather in the nature of the act, its relation to the employer's business and whether the employer has assented to it either by explicit modification of the original, formal instructions or impliedly by a course of conduct inconsistent with the limitations they impose.[23]

It is argued that Lovewell's postsolicitation activities were not part of his job or rendered in the course of his employment, because he did them acting "on his own initiative" and "to create good will." That he did them "on his own initiative" does not mean, as has been shown, that they were not authorized by defendant. Nor does the fact that their purpose and effect was "to create good will" take them out of the scope of his employment or make them "purely personal" acts. On the contrary, that is one of the things which make them inherently part of his work done on defendant's behalf. It is true he did these additional acts on his own behalf, and with a view to increasing his financial returns from his work. So every good agent or salesman does like things, for the same reason. But it is not true that Lovewell did not do them also "for and on account of" his principal, the defendant, and with its approval. By so much as he increased his returns through this activity, by just so much was he paid for it by the defendant. It, as well as he, derived additional benefit and business from it. It was work directly related to his employment,

---

[21] For cases in which the agent served, this being sufficient to subject the foreign corporation to in personam jurisdiction, was engaged in both solicitation and promotion activities, see International Shoe Co. v. Lovejoy, 1934, 219 Iowa 204, 257 N.W. 576, 101 A.L.R. 122; American Asphalt Roof Corp. v. Shankland, 1928, 205 Iowa 862, 219 N.W. 28, 60 A.L.R. 986.

The balance of convenience should be considered in determining what is a valid exercise of jurisdiction. See Clements v. MacFadden Publications. D.C.E.D.Tex. 1939, 28 F.Supp. 274, 276; (1942) 20 Tex.L.Rev. 219-22.

[22] See the discussion of the Supreme Court cases in Farmers & Merchants Bank of Cattlesburg, Ky. v. Federal Reserve Bank, D.C.E.D.Ky.1922, 286 F. 566.

[23] Restatement, Agency (1933) §§ 7, 26; cf. Mulhern v. Public Auto Parks,

not concerned with his purely private affairs. It was beneficial to both himself and his principal. If he performed it well, the necessary effect was to create good will for the defendant, as well as for himself. But the effect was not always or merely this. It was also the prevention of claims and disputes. It was taking a part, though not a final one, in adjusting them. It was aiding with performance of the company's obligations. These things amount to more than creating good will and therefore to more than "mere solicitation."

Defendant's argument is based on two fallacies. One is that when an agent voluntarily engages in activity, connected as this was to the subject matter of the agency, so as to bring additional advantage to himself and at the same time to his principal, he acts only on his own account, notwithstanding the principal repeatedly accepts and retains the benefit of such activity. That the agent derives a benefit from what he does in extending his principal's business does not justify this conclusion. The second fallacy is that anything which promotes good will is "mere solicitation." According to that criterion everything an employer or an agent might do which would tend to cause customers to return or new ones to come by learning of the satisfaction of old ones, would be "mere solicitation," and only acts harmful to the employer's interests would be a part of his business for jurisdictional purposes. The criterion is obviously untenable.

In view of Lovewell's activities beyond the stage of solicitation proper, their nature and connection with defendant's business, their repeated approval and acceptance by the company and the benefits it derived from them, there was "solicitation plus" in this case. The service of process therefore was valid. I concur in the additional reasons stated by Judge EDGERTON for reaching this result.

The judgment is reversed and the cause is remanded to the District Court for further proceedings.

Reversed and remanded.

EDGERTON, Associate Justice (concurring).

I concur in Judge RUTLEDGE'S opinion. The view that jurisdiction is lacking here rests ultimately on the decision that it was lacking in Green v. Chicago, B. & Q. R. Co.[1] That case seems to me distinguishable. There a western railroad solicited western business, and in some instances collected its price, in Pennsylvania. The plaintiff sought to sue the road in Pennsylvania for personal injuries received in Colorado. If the man in the street were asked whether the sale of western transportation in Pennsylvania amounted to the doing of business there by a railroad whose tracks and trains were thousands of miles away, he would be likely to say no, or at least that the question was doubtful. But if he were told that appellee's agent in the District solicited District dealers to buy its product for District use, and solicited District consumers to buy it of District dealers, that appellee shipped it to the District, and that its agent supervised its use there (though only in an advisory way) and discussed there its shortcomings and resulting complaints, he would not doubt that appellee was doing business there. Moreover, it is impossible to tell how far the decision in the Green case was due to reluctance to require the defendant and its witnesses to cross the continent and defend in the east a cause of action which arose in the west.[2]

Later cases, on the whole, have interpreted "doing business" more broadly. In St. Louis S. W. Ry. Co. of Texas v. Alexander[3] and again in Missouri, K. & T. R. Co. v. Reynolds[4] the state's jurisdiction was upheld on facts more or less like those in the Green case. It was also upheld in International Harvester Co. v. Commonwealth of Kentucky[5] where orders were solicited within the state but accepted without, goods shipped into the state, and payment sometimes accepted there. The Supreme Court called the Green case "extreme."[6] True, the state's jurisdiction was denied in People's Tobacco Co. v. American Tobacco

Inc., 1938, 296 Ill.App. 238, 16 N.E.2d 157; Heckel v. Cranford Golf Club, 1922, 97 N.J.L. 538, 117 A. 607.

[1] 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916.

[2] Cf. Davis v. Farmers' Co-op. Equity Co., 262 U.S. 312, 43 S.Ct. 556, 27 L. Ed. 996.

[3] 227 U.S. 218, 33 S.Ct. 245, 57 L.Ed. 486.

[4] 255 U.S. 565, 41 S.Ct. 446, 65 L.Ed. 788, affirming 224 Mass. 379, 113 N.E. 413; Id., 228 Mass. 584, 117 N.E. 913.

[5] 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479.

[6] 234 U.S. 579, 586, 34 S.Ct. 944, 58 L.Ed. 1479.

Co.;[7] but there the local agents of the corporation did not directly, by solicitation or otherwise, initiate contracts with their principal. They merely promoted, among the retail trade, purchases from jobbers who bought from the corporation. Our MacFadden case was closely similar.[8]

It has been suggested that "the existence of jurisdiction to determine the personal liability of a corporation * * * depends on the reasonableness of its exercise"[9] and that "if a foreign corporation voluntarily does business within the state it is bound by reasonable regulations of that business imposed by the state * * * because it is as reasonable and just to subject the corporation to those regulations as though it had consented."[10] In the normal course of business appellee's agent induced appellants, in the District, to buy its product. They bought it in the District, for use in the District, from a District dealer to whom appellee had sold it. They used it in the District. The alleged defect appeared there and the alleged cause of action presumably arose there. Appellants appear to reside there. I think it is reasonable and just that they should be allowed to enforce their claim there.[11]

STEPHENS, Associate Justice (dissenting).

The findings of fact made by the court, which are set out in full in footnote 1 in the majority opinion, were in brief to the effect that the appellee is a corporation of Kentucky with its principal place of business at Louisville and no office or place of business in the District; Lovewell was a resident of Chevy Chase, Maryland, was employed by the appellee for the purpose of soliciting orders for its products and transmitting such orders to the appellee in Louisville for acceptance or rejection; his activities were restricted to such solicitation and transmission of orders, except that upon occasion for the purpose of bringing about good will and promoting his work of soliciting business, but not as a matter of duty, Lovewell would visit jobs where the appellee's products were being used and make suggestions with respect to the solution of difficulties experienced in their use and forward complaints; the material known as "Brixment" which was used by the appellants in the construction of their house was obtained by one of the appellants from the Hudson Supply and Equipment Company and was billed by that Company to one of the appellants, Cora L. Frene; the order for this material was not placed by the appellants with Lovewell. The court concluded as a matter of law that the appellee was not engaged in doing or transacting business in the District of Columbia, and that the process served upon Lovewell was not effectual to bring the appellee before the court under D.C.Code (1940), § 13—103.

Upon these findings and conclusions the court entered the judgment appealed from "that the service of process made upon the said C. E. Lovewell . . . be and the same is hereby quashed."

The record on appeal contains the proceedings below including the evidence. Examination of the evidence shows that it was sufficient to support the findings. They are therefore conclusive.

The statute in respect of service of process upon foreign corporations, referred to by the trial court in its conclusions of law, is set out in full in the text of the majority opinion. Its provisions are of course to be construed and applied in consonance with the due process clause of the constitution and the general principles of law relating to jurisdiction.

The sole question in the case is whether the activities of Lovewell as described in the findings of the trial court were such as to constitute a doing or transacting of business in the District by the appellee. I think they were not, that they did not go beyond solicitation as that term has in

[7] 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 287, Ann.Cas.1918C, 537.

[8] Whitaker v. MacFadden Publications, 70 App.D.C. 165, 105 F.2d 44. Cancelmo v. Seaboard Air Line Ry., 56 App.D.C. 225, 12 F.2d 166, is much like the Green case.

[9] Farmers' & Merchants' Bank of Cattlesburg, Ky. v. Federal Reserve Bank of Cleveland, D.C., 286 F. 566, 588. Cf. Learned Hand, J., in Smolik v. Philadelphia & Reading Coal & Iron Co., D.C., 222 F. 148.

[10] Scott, Jurisdiction over Nonresidents Doing Business Within a State, 32 Harv. L.Rev. 871, 883.

[11] Cf. Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915 (Cardozo, J.); American Asphalt Roof Corp. v. Shankland, 205 Iowa 862, 219 N.W. 28, 60 A.L.R. 986.

effect been defined by the Supreme Court and this court.

It is well settled that the solicitation of orders in one jurisdiction which are forwarded to the home office of a corporation in another jurisdiction for acceptance or rejection and the shipping of the ordered goods into the jurisdiction. in which the solicitation took place, do not constitute the doing or transacting of business therein by the foreign corporation. Green v. Chicago, Burlington & Quincy Ry. Co., 1907, 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916; Philadelphia & Reading Ry. Co. v. McKibbin, 1917, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710; People's Tobacco Company v. American Tobacco Co., 1918, 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas. 1918C, 537; Cancelmo v. Seaboard Airline Railway, 1926, 56 App.D.C. 225, 12 F.2d 166; Whitaker v. Macfadden Publications, 1939, 70 App.D.C. 165, 105 F.2d 44. A question similar to that involved in the instant case was presented in Whitaker v. Macfadden Publications. There Whitaker sued the Macfadden Publications for an alleged libel in one of its magazines. He caused process to be served on one Arthur Pendergast as an agent of Macfadden Publications. There, as here, there was a motion to quash the service upon the ground that the Macfadden Publications was not doing business in the District. The trial court granted the motion and Whitaker appealed. We affirmed. We detailed the facts as follows:

". . . Defendant [Macfadden Publications] is a New York corporation. It sells and ships its magazines to, and collects payment from the District News Company, of Washington, D. C. The District News Company resells to and collects from retailers and street vendors. Pendergast and four assistants, for remuneration which defendant pays by check from New York, supervise and promote sales of the magazines among the street vendors who buy their stock from the District News Company. Pendergast solicits neither advertising nor subscriptions, and neither collects nor forwards money to defendant. Neither the District News Company nor Pendergast is authorized to make any contracts for defendant. Defendant has no place of business in the District, but the District News Company furnishes Pendergast with an office and telephone on its premises without cost to him or to defendant."

We said:

" 'A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there.' Philadelphia & Reading Railway Co. v. McKibbin, 243 U.S. 264, 265, 37 S.Ct. 280, 61 L.Ed. 710. Accordingly, the District Code provides for service of process on foreign corporations 'doing business in the District.' Tit. 24, § 373 [D.C.Code (1940) § 13—103]. It is elementary that not all economic activity amounts to 'doing business' in this sense. In Green v. Chicago, Burlington & Quincy Railway Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916, a railroad west of Chicago was sued in a United States court in Pennsylvania. The road maintained in Pennsylvania an office, a district freight and passenger agent, and several employees who solicited passenger and freight business. These agents did not sell tickets over defendant's lines, but they sold 'prepaid orders' which entitled the holder to receive a ticket in Chicago. The Supreme Court said it was 'obvious that the defendant was doing' in Pennsylvania, 'a considerable business of a certain kind.' Yet the Court ruled that 'The business shown in this case was in substance nothing more than that of solicitation' (205 U.S. page 533, 27 S.Ct. page 596, 51 L.Ed. 916), and that the defendant was not, in the jurisdictional sense, doing business in the state. If the Burlington was not doing business in Pennsylvania, by stronger reason Macfadden is not doing business here. The local agents of the Burlington solicited persons to enter into transactions with their employer, but the local agents of Macfadden do not; the transactions which Pendergast and his assistants promote are sales by the District News Company to newsboys or by newsboys to the public. The Burlington agents made contracts and received money for their employer, but the Macfadden agents do neither. The present case closely resembles People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas.1918C, 537. There the American company sold goods to Louisiana jobbers, who sold to retailers. The company sent drummers into the state to solicit orders from retailers, to be turned over to the jobbers. These drummers made no sales, collected no

money, and extended no credit. The Supreme Court held that the company was not doing business in Louisiana so as to permit service of process upon it. The Court distinguished International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, on the ground that there the agents not only solicited business but received payment." [70 App.D.C. at pages 165, 166; 105 F.2d at pages 44, 45.]

I think that Lovewell's activities in the instant case in visiting jobs where the appellee's products were being used and making suggestions with respect to the solution of difficulties experienced in their use and forwarding complaints were, to use the language of Green v. Chicago, Burlington & Quincy Ry., supra, "in substance nothing more than that of solicitation." Solicitation cannot sensibly be said to be limited to the mere verbal act of asking for orders. It properly includes activities "to bring about good will and create a favorable attitude, and thus promote . . . [the] work of soliciting business."[1]

The appellant relies upon Toledo Computing Scale Company v. Miller, 1912, 38 App.D.C. 237; Carroll Electric Co. v. Freed-Eisemann Radio Corp., 1931, 60 App.D.C. 228, 50 F.2d 993; and Hoffman v. Washington-Virginia Ry. Company, 1916, 44 App.D.C. 418. I think all of those cases distinguishable. In Toledo Computing Scale Company v. Miller a suit was brought against the Scale Company, a foreign corporation, for alleged false warranty and misrepresentation in the sale of a computing scale. In one aspect the facts in that case were similar to those in the instant case, that is, the representative upon whom service was made in the District in the Toledo case had no power to make binding contracts on behalf of the Scale Company but only authority to negotiate tentative contracts upon acceptance of which the goods were to be sent to the District. But the facts were otherwise materially different. The Scale Company, which was a corporation of New Jersey with executive offices and factory at Toledo, Ohio, had a representative in the District described by the Scale Company as its "sales agent" and charged with the duty of representing it in matters growing out of sales. He not only negotiated sales but also looked after deliveries, collections and complaints. He occupied an office in the District upon the window of which was printed "Toledo Computing Scale Company," the name of the representative not appearing. The representative who negotiated the sale which was the subject of the suit had personally delivered the scale to the purchaser plaintiff. In a letter from the Scale Company to the plaintiff reference was made "to the scale which you . . . purchased from our representative." On these facts we held that the representative upon whom service of summons was made was more than a mere solicitor and that the Scale Company was transacting business in the District and that the service was valid. We said:

". . . Congress intended that if a foreign corporation should transact business here, it should be subject, as to that business, to the jurisdiction of the local courts . . . .." [38 App.D.C. at page 240] Construing the same statute as the one involved in the instant case we said:

"Sec. 1537 [D.C.Code (1940) § 13—103], as previously pointed out, is in two paragraphs. The first paragraph relates to service upon foreign corporations 'doing business' in the District. The second prescribes the method of service 'when a foreign corporation shall transact business' here without having any place of business or resident agent in the District. . . ." [38 App.D.C. at page 241] We concluded:

". . . Its representatives, as above suggested, were much more than mere solicitors whose responsibility ended when they brought appellant and prospective purchasers together. They not only negotiated sales, but, we are convinced, looked after deliveries, collections, and complaints. . . ." [38 App.D.C. at page 242]

In Carroll Electric Co. v. Radio Corp. again the facts were materially different from those in the instant case. There the Carroll Electric Company, a District of Columbia corporation, sued the Freed-Eisemann Radio Corporation, a corporation of New York, for damages for an alleged breach of a contract existing between the two companies relating to certain dealings in radio equipment. The return of service of summons showed service "on the Defendant Corporation within named by serv-

---

[1] The quotation is from the last sentence of paragraph 3 of the findings set forth in footnote 1 in the majority opinion.

ing Fred McCarthy, Salesman, in charge personally . . . ." There was a special appearance and motion to quash upon the ground that the Radio Corporation was not doing or transacting business in the District at the date of the service and did not have or maintain an office or agent there, and that McCarthy was not a "Salesman, in charge" nor doing or transacting business for the defendant in the District except for assistance rendered in soliciting orders for merchandise. It appeared, however, that the Radio Corporation had a contract with a distributor in the District—for a time the Carroll Electric Company itself, prior to that another District of Columbia company. The contract was called a "Distributor's Franchise." The Radio Corporation was referred to in the contract as the "Manufacturer." Under that contract the manufacturer granted to the distributor a franchise for a given term in the District. The distributor agreed to the following: to carry a representative stock of the manufacturer's products and to exert effort to sell them at wholesale and to secure dealers to sell them at retail within the District; to purchase the products of the manufacturer on certain terms; to have every new dealer to whom the distributor sold the manufacturer's products approved by the manufacturer and to have such dealer execute the manufacturer's "Authorized Dealer Contract"; to act as a wholesale distributor of the manufacturer within the District and to maintain at the distributor's expense an office and showroom with an efficient service department and sales force adequately equipped to service and sell at wholesale the manufacturer's products; not to sell any radio equipment other than that furnished by the manufacturer. On these facts and under the same statute as the one involved in the instant case we held the service of summons upon McCarthy valid. We said:

"The terms of the contract between the parties have the effect of creating a limited agency in the distributor, under which the latter discharged various obligations for the manufacturer in disposing of its products within the specified area. The distributor was not an independent merchant dealing with the manufacturer upon its own initiative, but conducted its business in the District of Columbia in conformity with the stipulations contained in the contract. The activities thus provided for constituted the transaction of business by both parties not only in New York City, where the contract was made, but also in the District of Columbia, within which it was in part carried out. The case thus falls within the provisions of the second paragraph of section 373 supra [D.C.Code (1940) § 13—103], and the service of summons on McCarthy, who was an employee of the manufacturer, was valid under that paragraph. . . ." [60 App.D.C. at page 229; 50 F.2d at page 994]

In Hoffman v. Washington-Virginia Ry. Company there was no question whether the foreign corporations involved were doing or transacting business in the District of Columbia. The trial court found that "each severally had and maintained a place of business in the District of Columbia, and at said time [the time of service of summons] each severally was doing business in the District of Columbia." These findings of fact were not challenged. The question in the case as stated by this court was:

". . . whether the supreme court of the District has jurisdiction of an action brought by a resident of Virginia against a Virginia corporation having a place of and doing business in this District through its regularly appointed agents, upon whom the summons is served for a transitory cause of action arising outside the District. . . ." [44 App.D.C. at page 421]

The appellant relies also upon International Harvester v. Kentucky, 1914, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479. That case was distinguished in People's Tobacco Company v. American Tobacco Co., supra, from cases of mere solicitation of business on the ground that:

". . . in that case the facts disclosed that there was not only a continuous course of business in the solicitation of orders within the State, but there was also authority upon the part of such agents to receive payment in money, checks and drafts on behalf of the company, and to take notes payable and collectible at banks in Kentucky; these things, taken together, we held amounted to doing business within the State of Kentucky in such manner as to make the Harvester Company amenable to the process of the courts of that State." [246 U.S. at pages 87, 88, 38 S.Ct. 235, 62 L.Ed. 587, Ann.Cas.1918C, 537.]

I think the distinctions made by the majority between the facts in the instant case and those in Whitaker v. Macfadden

Publications and Green v. Chicago, Burlington & Quincy Ry., supra, are immaterial; that, as said above, the activities of Lovewell as described in the findings were in substance nothing more than solicitation in the normal sense of that term. In effect, therefore, in my view, the decision of the court is a repudiation of Whitaker v. Macfadden Publications and Green v. Chicago, Burlington & Quincy Ry. and denies to the appellee a disposition of the instant case according to the law as declared by this court and the Supreme Court. I think that under Whitaker v. Macfadden Publications and Green v. Chicago, Burlington & Quincy Ry. the appellee had a right to cause Lovewell to solicit orders without thereby submitting itself to the jurisdiction of the courts of the District for purposes of suit, and that the decision of the court now retroactively denies the appellee that right.