## COOKE v. KILGORE MFG. CO. et al.

Civ. No. 28505.

United States District Court, N. D. Ohio, E. D.

July 2, 1952.

Ray T. Miller, Cleveland, Ohio, for plaintiff.

Robert M. Weh (of Burgess, Fulton & Fullmer), Cleveland, Ohio, for defendants Reading Corp. and Central R. of New Jersey.

McNAMEE, District Judge.

This is an action for damages arising from personal injuries sustained by plaintiff as a result of an explosion of a shipment of munitions at South Amboy, New Jersey. It appears from the Complaint that the shipment originated in Ohio and was destined for delivery to the Government of Pakistan. Although plaintiff is a resident of New Jersey and files his Complaint against eight corporate defendants, this is not a diversity of citizenship case. The jurisdiction of this court derives from the claims that the defendants "violated the provisions of the various Acts of Congress relating to the transportation of explosives and kindred products in interstate commerce" and that the amount involved exceeds $3,000. The defendants are:

Kilgore Manufacturing Company
Pennsylvania Railroad Company
Baltimore & Ohio Railroad Company
Reading Corporation
Central Railroad of New Jersey
Hercules Powder Company
Commercial Credit Company
National Carloading Corporation.

Only one of the defendants, Kilgore Manufacturing Company, is an Ohio corporation. 64 actions of a similar nature arising out of personal injuries or deaths caused by the same explosion in New Jersey are pending in this court. In all such actions, as here, plaintiffs are non-residents of the State of Ohio. Presumably these actions were filed here upon the premise that this court has jurisdiction of all parties defendant, thus enabling plaintiff to litigate his claims of joint and several liability against all defendants in one action.

Service of summons upon the Commercial Credit Company has been quashed. Two of the defendants, Central Railroad of New Jersey and the Reading Corporation, have filed motions to dismiss the action as to them on the grounds (1) that such defendants are foreign corporations and not doing business in Ohio, and (2) that the action "as to said defendants" imposes an unreasonable burden on interstate commerce.

From affidavits filed by defendants and depositions taken by plaintiff it appears that the Reading Corporation is a Pennsylvania corporation engaged in the business of transporting persons and freight as a common carrier over railroad lines located outside of the State of Ohio. While it has no railroad tracks in Ohio, from time to time other railroad companies with tracks in this State haul cars of the Reading Corporation over their lines in Ohio. For twenty-six years the Reading Corporation has maintained an office in the Park Building in Cleveland, Ohio. Presently, in addition to the General Agent, W. J. Brennan, there are three employees of the company working through this office. The office is maintained for the purpose

of soliciting freight and "rendering service as might be required in connection with the movement of traffic—freight traffic." This includes servicing of complaints made in connection with delays. The office of the company is listed in the building directory in the Park Building and in the telephone directory. Neither the General Agent nor any one else employed at the local office sells tickets, issues bills of lading, or enters into contracts on behalf of the defendant. All claims for lost or damaged freight are handled in Philadelphia. The company does furnish an automobile for the General Agent's use. Title to the car is in the company and all expense of its maintenance and operation is paid by the company either directly or by reimbursing the local agent for payments made by him. The volume of business done by the company in traffic originating in this area amounts to about 20,000 cars a year.

Central Railroad of New Jersey is a New Jersey corporation and has no tracks or other property in Ohio. Excepting that it furnishes no automobile for the use of its General Agent, the position of this defendant is in all other respects substantially the same as that of the Reading Corporation. Central Railroad of New Jersey maintains a separate office in the Park Building. In addition to the General Agent, F. F. Siegel, it also has three employees working in the local office. Siegel described his duties as "primarily to solicit freight and offer any service needed by the public." He testified also that the servicing of complaints consisted primarily in "tracing shipments." The volume of business done by this defendant in traffic originating in this area was also about 20,000 cars a year.

The issue presented by the first ground of the motion is: Were the defendants doing business, in a jurisdictional sense, in the Northern District of Ohio? On the authority of Green v. Chicago, B. & Q. R. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916, the defendants assert that this question must be answered in the negative. The Green case is the leading authority for the proposition that liability for service of process is not incurred by a foreign corporation whose business in the district of the forum consists merely of the solicitation of business. While the jurisdictional facts of this case are analogous to those in the Green case, later decisions of the Supreme Court cast serious doubt upon the binding precedential effect of that case. Within four years after the Green case was decided, the Supreme Court, in St. Louis S. W. Ry. v. Alexander, 227 U.S. 218, 33 S.Ct. 245, 248, 57 L.Ed. 486, held that correspondence between plaintiff and the New York freight agent of the foreign railroad in respect of claims was "the transaction of business" in such a manner as to bring the corporation within the Southern District of New York, although it appears from the statement of facts in that case that "all claims were handled by the general offices at either St. Louis or Tyler, Texas". The marks of similarity between the jurisdictional facts of St. Louis S. W. Ry. v. Alexander and the instant case are no less striking than the analogous facts of the Green case. While the record here discloses no evidence of correspondence with the local agents concerning claims, it does show that the local agents of defendants "service complaints" and render "service as might be required in connection with the movement of traffic—freight traffic." If there be any substantial distinction between "correspondence concerning claims" and "servicing complaints" such as to warrant sustaining jurisdiction in the former situation and to compel its denial in the latter, I am unable to perceive it.

Within seven years after Green v. Chicago, B. & Q., the Supreme Court, in International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 946, 58 L.Ed. 1479, found that under the facts "there was something more than mere solicitation" and held service on the foreign corporation to be good. Referring to Green v. Chicago, B. & Q., the court termed it "an extreme case."

Defendants also rely upon Philadelphia & Reading R. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed 710. That case is not in point on its facts. The defendant had no office or employees in the foreign jurisdiction. The case, however,

does refer with approval to Green v. Chicago, B. & Q.

In Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139, 141, Judge Learned Hand said:

"Possibly the maintenance of a regular agency for the solicitation of business will serve without more. The answer made in Green v. Chicago, B. & Q. R. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916, and People's Tobacco Co. v. Amer. Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas.1918C, 537, perhaps becomes somewhat doubtful in the light of International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, and, if it still remains true, it readily yields to slight additions."

In that case Judge Hand also discussed at length the theory of personal jurisdiction in actions *in personam* against foreign corporations. His conclusion was:

"There must be some continuous dealings in the state of the forum; enough to demand a trial away from its home.

"This last appears to us to be really the controlling consideration, expressed shortly by the word 'presence,' but involving an estimate of the inconveniences which would result from requiring it to defend, where it has been sued. We are to inquire whether the extent and continuity of what it has done in the state in question makes it reasonable to bring it before one of its courts."

In Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511, 516, 146 A.L.R. 926, Mr. Justice Rutledge (then Associate Justice of the Court of Appeals for the District of Columbia) remarked:

"No businessman would regard 'selling,' the 'taking of orders,' 'solicitation' as not 'doing business.' The merchant or manufacturer considers these things the heart of business."

And again,

"It would seem, therefore, that the 'mere solicitation' rule should be abandoned when the soliciting activity is a regular, continuous and sustained course of business, as it is in this case. It constitutes, in the practical sense, both 'doing business' and 'transacting business,' and should do so in the legal sense. Although the rule has not been clearly and expressly repudiated by the Supreme Court, its integrity has been much impaired by the decisions which sustain jurisdiction when very little more than 'mere solicitation' is done." 134 F.2d at page 516–517.

That the critical observations of Judge Hand and Mr. Justice Rutledge met with the approval of the Supreme Court is evident from the opinion written by Chief Justice Stone in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95. The discussion of the jurisdictional question in that case leaves no room for doubt as to the court's concurrence in the views of the distinguished jurists mentioned above. The Supreme Court adopts Judge Hand's views that the term "presence" when used in relation to corporate activities in a foreign jurisdiction is merely symbolic of those activities within such jurisdiction "which courts will deem to be sufficient to satisfy the demands of due process", and that "An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection. Hutchinson v. Chase & Gilbert, supra, 45 F.2d at page 141." In International Shoe Co. v. Washington, Chief Justice Stone reviews the conflict of opinions in the cases on the question of the degree of activity necessary to render a corporation amenable to suit in a foreign district. His discussion on this point is summarized as follows:

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. St. Louis

S. W. R. Co. v. Alexander, supra, 227 U.S. at page 228, 33 S.Ct. [245] 248, 57 L.Ed. 486, Ann.Cas.1915B, 77; International Harvester Co. v. Kentucky, supra, 234 U.S. at page 587, 34 S.Ct. [944] 946, 58 L.Ed. 1479. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." 326 U.S. at page 319, 66 S.Ct. at page 159.

It seems reasonably to be inferred from the above-quoted language and the specific references therein to St. Louis S. W. R. v. Alexander and International Harvester Co. v. Kentucky, wherein jurisdiction was upheld upon the rule of "solicitation plus", that this rule is no longer to be considered as decisive in determining whether a foreign corporation is doing business in a jurisdictional sense. The new criteria adopted by the Supreme Court compels a determination of the broader question whether corporate activity in a foreign jurisdiction is such as to make it reasonable that the corporation be required to defend "the particular suit which is brought there."

While the facts in International Shoe Co. v. Washington did not involve solicitation of business by a railroad corporation in a foreign jurisdiction, the probable attitude of the Supreme Court on that question is forecast in the dissenting opinion of four members of the court in Georgia v. Pennsylvania R.R. Co., 324 U.S. 439, 65 S.Ct. 716, 732, 89 L.Ed. 1051. In the last cited case the State of Georgia filed an original action in the Supreme Court under the Clayton Act, 15 U.S.C.A. § 12 et seq., against a number of railroads. It was suggested that the court ought not to entertain the suit as an original action because it could be more conveniently and appropriately litigated in a district court having jurisdiction of all the defendants. The majority of the court took the view that there was nothing in the record to show that all the defendants could be "found" or were "transacting business" within a judicial district in Georgia or elsewhere. A minority, consisting of Chief Justice Stone and Justices Jackson, Frankfurter and Roberts, were of the opinion that the burden was on the plaintiff to show "that it will be unable to reach all of the defendants in a convenient district." The minority opinion then noted that—

"Under § 12 of the Clayton Act, 15 U.S.C. § 22, 15 U.S.C.A. § 22, these defendants may be sued in any district in which they are 'found' or 'transact business.' A corporation both is 'found' and 'transacts business' in a district in which it operates a railroad *or in which it maintains an office for the solicitation of freight or passenger traffic.* See Eastman Kodak Co. v. Southern Photo Co., 273 U.S. 359, 370–374, 47 S.Ct. 400, 402–404, 71 L. Ed. 684; United States v. Univis Lens Co., 316 U.S. 241, 246, 62 S.Ct. 1088, 1091, 86 L.Ed. 1408." (Emphasis supplied.)

The underscored portion of the above-quoted language is entitled to greater weight than that usually accorded the expression of a minority view. The division in the court on the point in question was on the issue of the burden of proof. There was no apparent disagreement between the majority and the minority on the proposition that a railroad, by the maintenance of an office for the solicitation of business thereby "transacts business" in a jurisdictional sense. Mr. Justice Rutledge was one of the majority and, in the light of his vigorous criticism of the "mere solicitation" rule in Frene v. Louisville Cement Co., supra, it may be assumed confidently that he, at least, was in agreement with the minority view on that subject. Manifestly, no valid distinction can be made between "transacts business" as that term is used in the Clayton Act, and "doing business" within the meaning of Section 1391(c) of Title 28 U.S.C., which is the applicable venue section here.

It is true that since International Shoe Co. v. Washington some appellate and district courts still follow the Green case. See Kelley v. Delaware, L. & W. R. Co., 1 Cir., 170 F.2d 195. But other courts, viewing the criteria laid down in International Shoe as superseding the "mere solicitation"

rule of the Green case, have refused to consider the latter authority as binding. Among these is the Court of Appeals for the Sixth Circuit, which, in Lasky v. Norfolk & Western R. Co., 157 F.2d 674, sustained jurisdiction of a foreign railroad corporation upon service on its soliciting agent in the Northern District of Ohio. It is true that this decision rests in part upon the authority of Mississippi Pub. Corp. v. Murphree, 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185, but the Court of Appeals also cited and relied upon International Shoe Co. v. Washington, supra.

Recent cases adhering to the rule of the Green case, as well as those refusing to follow it, are referred to and commented upon in Perkins v. Louisville & N. R. Co., D.C., 94 F.Supp. 946, 951. The decision in the Perkins case turned upon the application of the law of California, but the well-reasoned opinion of Judge Carter discusses and analyzes the federal cases as well. The logic of Judge Carter's conclusion in that case seems unassailable. He said:

> "Whether the defendant is doing business or may be 'found' in this state for jurisdictional purposes must be decided on the basis of realities and not fiction. The maintenance of an office and the solicitation of business, when judged by common knowledge and experience, constitutes an activity which requires a foreign corporation's presence within the state. The corporation is there transacting one of the important phases of its business, and common sense compels the conclusion that it is there doing business in the jurisdictional sense."

Inasmuch as considerations of convenience are relevant in determining jurisdiction of a foreign corporation, it should be noted that Section 1404(a) of Title 28 U.S.C., enacted as a part of the revised venue act of 1948, now affords a remedy to a corporate defendant against being compelled to defend an action in a jurisdiction remote from its commercial domicile, where maintenance of the suit there would be oppressively inconvenient and unjust.

In this case, two railroad corporations, each with offices in this jurisdiction for more than a quarter of a century, are engaging in the solicitation of business and the rendering of service to the public in connection with that business. The corporate activities of each have been carried on under the direction of a general agent. These activities have been continuous, systematic and substantial. In whole or in part they have produced a volume of business amounting to 20,000 cars a year, or an average of more than fifty cars per day. Substantial revenues have been realized by reason of such activity. Under the trend of judicial thinking as evidenced in recent cases, this constitutes "doing business" in a jurisdictional as well as in a commercial sense. The cause of action set forth in the Complaint arose in New Jersey. Doubtless it would be more convenient for defendants if the action were tried in that state or in a jurisdiction more conveniently located than here. But the trial of this action here will also be attended with serious inconvenience to plaintiff, who resides in New Jersey. A dismissal of these defendants would require plaintiff to assert his claims against them in one or more additional suits in other jurisdictions. The law favors one trial against all defendants. In the circumstances here presented I am of the opinion that the first ground of defendants' motions must be overruled.

The second ground of the motions may be disposed of with brief comment. Title 28 Section 1391(b) and (c) are the governing venue provisions. Under subsection (c) a civil action may be maintained against a corporation in any judicial district where the corporation is "doing business." Enactment of a venue statute is within the undoubted power of Congress. It is not within the judicial province to deny that power even though the effect of its exercise may be to place a burden upon interstate commerce. Wadell v. Green Textile Associates, Inc., D.C., 92 F.Supp. 738, 742.

Defendants' motions to dismiss are overruled.

This ruling will apply also to cases Nos. 28506 to 28514 inclusive, 28541, 28892 to 28904 inclusive, 28985 to 28988 inclusive, 29051 to 29055 inclusive, 29141 to 29145 inclusive, 29152 to 29171 inclusive, and 29174.