# Staunton

## H. G. Tignor v. L. G. Balfour & Company, Etc.

September 11, 1936.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*R. Hugh Rudd*, for the plaintiff in error.

*Tucker, Bronson, Satterfield & Mays*, for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

H. G. Tignor brought an action in the Law and Equity Court of the city of Richmond to recover a personal judgment against L. G. Balfour & Company, a corporation chartered under the laws of the State of Massachusetts, and not domesticated in Virginia. Process was served upon an alleged agent. The non-resident corporation made a special appearance, and filed a plea in abatement; to this plea plaintiff filed his replication. A jury was sworn to try the issue thus joined. Subsequently the parties agreed to submit the issue to the court. The trial judge found that L. G. Balfour & Company was not, on June 1, 1934, the date the process was served, doing business in Virginia in the sense that it was amenable to the service of process, and dismissed the case. From that judgment this writ of error was awarded.

There is no controversy between the parties as to the general rule applicable to cases of this nature. The rule is stated in *People's Tobacco Co.* v. *American Tobacco Co.*, 246 U. S. 79, 87, 38 S. Ct. 233, 235, 62 L. Ed. 587, Ann. Cas. 1918C, 537, as follows: "The general rule deducible from all our decisions is that the business [done within the state in which process is served] must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the State or district where service is attempted."

The real controversy between the parties is on the application of the general rule to the facts. The trial judge, Hon. Robert N. Pollard, in a written memorandum, found the controlling facts to be as follows: "The L. G. Balfour Company is a corporation created under the laws of the State of Massachusetts with its principal office in the city of Attleboro in that State. The purposes for which the corporation is formed as defined in its charter are to manufacture, buy, sell and generally deal in badges, novelties, jewelry and all kinds of metal wear, stationery and leather goods, and to do all things incidental thereto. The company sells its merchandise generally over the various States and its patrons in most cases consist of schools and colleges and classes and fraternities therein. Selling activities are carried on through representatives in given localities and there are two divisions of the business of the company, namely, the fraternity division and the college, school and class (C. S. & C.) division—the names of these divisions implying the nature of the business of each division. In both divisions orders are solicited by and given to salesmen; a deposit is taken with the order, and the order and deposit sent to Attleboro, there to be accepted or rejected; if accepted the order is filled and balance paid by the customer to the Attleboro office. Deliveries are made in most cases to the customer but in a few cases in the C. S. & C. division shipments are to the representative who delivers to the school or college. The company has in the State of Virginia salesmen in the fraternity division and a district

manager and salesmen in the C. S. & C. division. W. B. Anderson is a salesman and district manager in the C. S. & C. division and is a salesman in the fraternity division. All salesmen are on a strictly commission basis, no salaries being paid to anyone in this State. Anderson receives a commission on all sales made by him in both divisions and a commission on all sales made in the C. S. & C. division by salesmen in the territory of which he is district manager of salesmen. Anderson's duties as district manager are in a general way to supervise all sales and salesmen in the territory assigned to him, subject to instruction from the company. At the time process was served on him he had no authority to make any contract of employment with salesmen, but simply to receive applications from prospective salesmen, and to forward same to Attleboro for acceptance or rejection after an investigation had been there conducted. As district manager, Anderson had no broader power as to solicitation or orders than an ordinary salesman possessed. The name of L. G. Balfour Company appears in both the Richmond City Directory and the local telephone directory. The address listed in both directories is No. 106 North 7th Street, where Anderson conducts a business known as Southern Athletic Supply Company, and sells at retail athletic goods and accessories. The name of the defendant company appears on the window of this store. No representative of the defendant works in this store but Anderson and no part of the rent is paid by the defendant. The listings in the directories and the placing of the sign on the window were done by Anderson at his own expense and without consultation with the defendant. Articles manufactured by the defendant and bearing its labels were offered for sale in this store but whether by Anderson as a salesman of the company or for the account of the Southern Athletic Supply Company the evidence fails to disclose.

"No salesman has power to consummate a sale with a customer, but only to take orders and deposits to be forwarded to that State. An order does not become a contract until accepted in Massachusetts. All shipments are made from that State directly to customers and collections therefor

are made without the intervention of the salesman. The defendant maintains no office or store in this State, expends nothing for advertisement, pays no salaries, makes no contracts here and makes no use of the banking institutions of this State."

We agree with defendant in its contention that the question presented is controlled by the principles adopted and enunciated by the Supreme Court of the United States, as it involves the "due process" clause of the Federal Constitution. The term "doing business" has a legal significance which differs with the type of case to which it is applied. It is quite possible that a foreign corporation may be held to be "doing business" in a given state for one purpose, and not "doing business" for another. Three general classes of cases involving "doing business" are found in the reports, viz., (1) Those involving service of process upon a foreign corporation; (2) those involving taxation; (3) those involving domestication or qualification under statutes regulatory of foreign corporations. Many of the cases of the second and third classes are primarily concerned with the nature and character of the business done, that is, whether the business is interstate, and hence beyond the power of the State to tax or regulate. In process cases that feature is not determinative. *International Harvester Co.* v. *Kentucky,* 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479; *Tauza* v. *Susquehanna Coal Co.,* 220 N. Y. 259, 115 N. E. 915.

The legal tests, for determining whether or not the foreign corporation is "doing business" in a State, differ as the case falls within one or the other of these classifications, and precedents dealing with one class are of little value in those instances where it is sought to apply them to another class.

Plaintiff contends that to render a foreign corporation amenable to service of process, it is sufficient to prove a continuous course of business in the solicitation of orders, and the flow of shipments of goods into the State in fulfillment of these orders. This contention is supported by some statements found in the case of *International Harvester Co.* v. *Kentucky, supra,* and a few later cases so interpret this de-

cision. *American Asphalt Roof Corp.* v. *Shankland*, 205 Iowa, 862, 219 N. W. 28, 60 A. L. R. 986; *Tauza* v. *Susquehanna Coal Co., supra; Halpin* v. *North American Refractories Co.*, 151 Misc. 764, 272 N. Y. S. 393, and *Swift* v. *Matthews Eng. Co.*, 178 App. Div. 201, 165 N. Y. S. 136.

Prior to the decision in the *International Harvester Case,* the Supreme Court in *Green* v. *Chicago, B. & Q. Ry. Co.*, 205. U. S. 530, 533, 27 S. Ct. 595, 596, 51 L. Ed. 916, held that a railroad was. not amenable to service of process in Pennsylvania, upon proof that it maintained an office with a clerical force therein, under the direction and supervision of an employee designated as a district passenger and freight agent, who solicited passengers and freight to be transported over railway lines lying wholly without the State of Pennsylvania. When a prospective passenger desired a ticket, and applied to the agent for one, the agent took the applicant's money and procured from one of the railroads running west from Philadelphia, a ticket for Chicago and a prepaid order, which gave to the applicant, upon his arrival at Chicago, the right to receive, from the Chicago, Burlington & Quincy Railroad, a ticket over that road. In some cases, for the convenience of the shippers who had received bills of lading from the initial line for goods routed over the defendant's lines, he gave in exchange therefor bills of lading over the defendant's lines. In these bills of lading it was recited that they should not be in force until the freight had been actually received by the defendant.

The decision was as follows: "The question here is whether service upon the agent was sufficient; and one element of its sufficiency is whether the facts show that the defendant corporation was doing business within the district. It is obvious that the defendant was doing there a considerable business of a certain kind, although there was no carriage of freight or passengers. * * *

"The business shown in this case was, in substance, nothing more than that of solicitation."

Since the *International Harvester Case* was decided, the Supreme Court has dealt with the same question in three

cases. In *W. S. Tyler Co.* v. *Ludlow-Saylor Wire Co.*, 236 U. S. 723, 35 S. Ct. 458, 459, 59 L. Ed. 808, it appeared: "The Wire Company is a manufacturer of screens, with plant and home office at St. Louis, Missouri. For some eighteen months in 1911 and 1912 it employed Guerin, upon whom process was served, as 'Eastern representative,' paying him a small salary, commission on sales, and traveling expenses. During this period he was also employed by another corporation which rented a room in the building at No. 30.Church street, New York City, and there he maintained headquarters as representative of both concerns—the rent and stenographer's wages being apportioned between them, according to agreement. His duty to appellee was 'to solicit orders (and) forward them when received to the home office for execution.' Considering all the facts disclosed, we think them insufficient to support the allegation that appellee had a regular and established place of business at 30 Church street within the intendment of the statute. *Green* v. *Chicago, B. & Q. Ry. Co.*, 205 U. S. 530, 533, 27 S. Ct. 595, 51 L. Ed. 916, 917."

In *Philadelphia & Reading Ry. Co.* v. *McKibbin*, 243 U. S. 264, 37 S. Ct. 280, 61 L. Ed. 710, it was held that a railroad corporation not owning or operating any part of its railway, or holding other property within a State, may not be said to be doing business there merely because cars shipped by it, loaded with the goods of its shippers, pass into that State, and are returned therefrom, over the line of a connecting carrier (each carrier receiving only its proportionate share of the freight charged for the interstate haul), or because the connecting carrier, within the State, sells coupon tickets and displays the other carrier's name at its station and in the telephone directory, to promote travel and public convenience.

In *People's Tobacco Co.* v. *American Tobacco Co.*, 246 U. S. 79, 87, 38 S. Ct. 233, 235, 62 L. Ed. 587, Ann. Cas. 1918C, 537, Mr. Justice Day, who delivered the opinion in the *International Harvester Co. Case,* interpreted the opinion in that case as follows: "The plaintiff in error relies upon *International Harvester Co.* v. *Kentucky*, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479, but in that case the facts disclosed that there was not

only a continuous course of business in the solicitation of orders within the State, but there was also authority upon the part of such agents to receive payment in money, checks, and drafts on behalf of the company, and to take notes payable and collectable at banks in Kentucky; these things, taken together, we held amounted to doing business within the State of Kentucky in such manner as to make the Harvester Company amenable to the process of the courts of that State."

When the *International Harvester Case* is considered with the opinions in the other four cases cited, it cannot be construed as holding that a continuous course of solicitation and shipment of goods into a state as a result thereof, alone, constitutes doing business in the sense contended for by plaintiff. While in the *International Harvester Case* emphasis was placed upon the continuous course of business in the solicitation of orders and the flow of shipments of goods within the State in fulfillment of those orders, another essential business function was present; namely, permission of the agents of the International Harvester Company to accept money, checks or notes in settlement for the purchase price of the goods delivered in Kentucky. That element is totally lacking in the case at bar. The facts, as found by the trial judge, were that after the soliciting agent had sent the orders out of the State to the home office of the corporation for acceptance or rejection, their obligations and duties to the company were fully performed. Thereafter, with minor exceptions, deliveries to, and collections from the purchasers were made from the home office of the company.

Plaintiff attempts to distinguish the *International Harvester Case* from the *Green* and *McKibbin Cases* on the ground that they involved the solicitation for railway companies whose transportation lines were situate beyond the boundary of the State in which the solicitation was done. The other two cases did not involve the business of common carrier, but of manufacturers and distributors of merchandise. This same contention was made in *Hilton* v. *Northwestern Expanded Metal Co.* (D. C. Ga. 1926). 16 F. (2d) 821, 822, where the court said: "The *International Harvester Case* also involved

extensive solicitation and organization of solicitors. In addition it presented features of shipment into the State in response to orders accepted and collections for the goods shipped by the agents who had taken the orders. In dealing with the *Green Case* the court did not distinguish it on the ground that it related to a railroad, but accepted it as authoritative for the proposition that mere solicitation did not constitute doing business in the connection under discussion. The fact that in the *International Harvester Case* goods were shipped in response to the orders cannot be taken as the controlling distinction, because that would probably be true of all cases of solicitation—that some of it would be successful, and that services or goods would be delivered in consequence thereof.

"It seems to me that the fact that the agents within the State were engaged also in continuously and regularly making collections for the goods sold is to be taken as the real distinguishing fact between the two cases, and that is missing here." See also, *Davega, Inc.* v. *Lincoln Furniture Mfg. Co.* (C. C. A. 2, 1928), 29 F. (2d) 164.

■■ A soliciting agent, in this State, for a foreign corporation, may maintain an office or place of business on which the name of such corporation appears on the doors and windows of such place, without making the corporation amenable to service of process; but if an essential corporate function, even though slight, is delegated to such agent, or if such agent, with the permission of the corporation, exercises such authority at such office or place of business, then the corporation is amenable to process served upon such agent. The trial court found as a fact that no business, except solicitation, was done by W. B. Anderson at 106 N. 7th Street, in the city of Richmond, or elsewhere within the State. There is evidence in the record which supports this finding, and hence it is binding upon this court.

For the reasons stated, the judgment of the trial court is affirmed.

*Affirmed.*