## MAS v. OWENS–ILLINOIS GLASS CO.
### No. 64.

District Court, E. D. Virginia,
Richmond Division.
Sept. 4, 1940.

John T. Wingo, of Richmond, Va., and Stone, Boyden & Mack, of Washington, D. C., for plaintiff.

Hunton, Williams, Anderson, Gay & Moore, of Richmond, Va., and Williams, Eversman & Morgan, of Toledo, Ohio, for the defendant.

POLLARD, District Judge.

The plaintiff, George N. Mas, a citizen of the State of Virginia, residing in the City of Richmond, brought this suit seeking to recover damages against the defendant for the alleged appropriation of certain designs for bottles alleged to have been conceived by the plaintiff and to have been manufactured by the defendant. The plaintiff also seeks an accounting, the payment of royalties and a permanent injunction. The defendant being a foreign corporation and not having designated a statutory agent in Virginia, process was served on Frank Jones, an alleged agent of the defendant. The defendant seasonably filed its motion to quash the service of process and to set aside the service of notice and summons on the grounds, among others, that the defendant was not at the time of the service of notice and summons present in the State of Virginia so as to make it amenable to service of process in that State, and that Frank Jones was not at that time an agent of the defendant corporation upon whom service could be made. The questions now before the Court arise on that motion.

While the evidence was exhaustive, it contains few, if any, material conflicts. The differences of the parties arise on the legal significance which should be given to the admitted facts.

Upon consideration of the evidence in the case, the Court makes the following findings of fact:

1. The defendant, Owens-Illinois Glass Company, is a corporation organized and existing under the laws of the State of Ohio and is engaged primarily in the business of manufacturing glass containers. The principal office of the corporation, as set forth in the Articles of Incorporation, is located in Toledo, Ohio. All of its cor-

porate records and books of account are kept in that City and all meetings of its stockholders and directors are held there. All of the general officers of the corporation reside in Toledo, and since April 20, 1924, the defendant has had no other principal office or place of business.

2. The plaintiff, George N. Mas, is now and was at the time of the institution of this suit, a citizen of the State of Virginia, residing in the City of Richmond, within the Eastern District of Virginia.

3. The defendant, Owens-Illinois Glass Company, is not qualified to do business in the State of Virginia as a foreign corporation. It rents no office in that State and makes no allowance to any of its officers, salesmen or employees for office rental in Virginia. The defendant carries on no manufacturing there, and has no factory, warehouse or storehouse in that State. It keeps no bank account and no part of its property has at any time been permanently located in Virginia.

4. Frank Jones, the person upon whom the summons in this suit was served, is listed in the Richmond City Directory for the years 1937, 1938 and 1939 as "Dist. Mgr. Owens-Illinois Glass Co."

5. The Richmond Telephone Directory, Winter Edition, 1939–1940, contains the listing, "Owens-Illinois Glass Co. 19 S. 8th, 2-3403", but defendant has not paid for the rental of a telephone or a listing in said telephone directory.

6. Frank Jones has been employed by the defendant in the beer and beverage bottle division of its business as a salesman since the year 1929. His home is in Richmond but his territory embraces the entire State of Virginia. He has other business connections and only a portion of his time is given to the performance of his duties as salesman for the defendant company. He is paid a fixed salary plus a bonus, the amount of which is dependent on the volume of his sales. The defendant has salesmen other than Jones operating in the State of Virginia. In the year 1938, the defendant sold in Virginia to 103 customers merchandise worth $610,000, of which Frank Jones sold approximately $157,000 to 26 customers, and in the year 1939 the defendant sold in Virginia to 119 customers merchandise worth $656,000, of which Frank Jones sold approximately $190,000 to 36 customers.

7. Frank Jones in the performance of his duties as salesman for the defendant company solicits orders for the purchase of beer and beverage bottles manufactured by it. He is furnished by the company with a standard form of order blank. When Jones succeeds in securing an order he has the buyer sign the order and forwards the same to the defendant at Toledo, Ohio, for acceptance or rejection. Jones has no authority to accept an order and the order form contains a provision that the same shall not become binding on the defendant until approved and accepted by the Owens-Illinois Glass Company at its office in Toledo, Ohio.

8. The printed order blank contains the following provision as to the terms of sale: "Terms. Thirty days net or cash discount of one per cent (1%) to be allowed Buyer if paid for within ten days from date of invoice. If at any time Buyer's credit, in Seller's judgment, becomes impaired, Seller has right to require payment in advance." In taking orders from his customers in Virginia it was the practice of Frank Jones to change the terms of sale specified in the printed form of contract in order to make the same conform to the defendant's known attitude as to such customer's credit rating. All such changes are made by Jones before the order is sent by him to Toledo for acceptance or rejection. The great majority of merchandise sold in Virginia is made upon the terms specified in the printed form of order. Occasionally the printed terms of sale are departed from and sales are made on sight draft, bill of lading attached, C. O. D., or cash basis. Such sales constitute less than 2% of the total sales. Since 1936 there have been only twelve sight draft bill of lading shipments and six C. O. D. shipments in Virginia. Since September 1, 1939, to the date of the taking of depositions in April, 1940, only one sight draft bill of lading sale had been made in Virginia and there had been no C. O. D. or cash sales.

9. Since September 1, 1938, all shipments of merchandise made by the defendant into Virginia pursuant to orders accepted by it have been made f. o. b. cars or trucks at the plant of manufacture. Prior to that date, some shipments were made f. o. b. the customer's city in the State of Virginia, though the majority of said orders were f. o. b. plant of manufacture. All of the defendant's manufacturing plants are

located outside of the State of Virginia and all shipments of merchandise to customers in Virginia are made from points outside of the State of Virginia.

10. In addition to the main duties as salesman in the solicitation and transmission of orders to the defendant, the said Frank Jones performed other services for the defendant in Virginia incidental to his duties as salesman. The defendant supplied Jones and its other salesmen with forms upon which they furnished the defendant reports as to the credit standing of prospective customers. Before submitting such reports, Jones makes inquiries and collects information concerning the financial rating of such customers. However, the furnishing of such reports is the exception and not the rule, and neither Frank Jones nor any other person in Virginia has the authority to extend any credit, all such decisions being made by the defendant at its office in Toledo. In the main customers make payments for merchandise to the defendant's general office in Toledo and it is not part of the duties of Jones to make collection for the goods he has sold. Occasionally, however, he is called upon by the defendant's credit department to assist in the collection of an account, and on very rare occasions he has actually received a check payable to the defendant and transmitted the same to Toledo. All such services relate to delinquent acounts. While the adjustment and settlement of claims are matters exclusively handled by the claims division of the defendant in Toledo, yet there have been instances in which Jones has been called upon to secure and forward the facts as to such claims. It is customary for salesmen to accompany such information with their recommendations and recommendations made by Jones have been rejected and the claims of his customers disallowed by the claims division. On rare occasions when a customer desires a sample of the merchandise, the defendant has used Jones to present such sample and secure the customer's approval or criticism.

11. There is no employee or representative of the Owens-Illinois Glass Company in Virginia whose activities or authority exceeds that of Frank Jones.

The reported cases deal with three classes of litigation involving "doing business", and that term has a legal significance which differs with the type of case to which it is applied. The three general classes of cases involve (1) service of process upon a foreign corporation; (2) taxation; and (3) domestication or qualification under statutes regulatory of foreign corporations. Precedents dealing with one class are of little value in their application to another class. Formerly the theory upon which the courts of a state assumed jurisdiction of a foreign corporation carrying on business within its confines was that of implied consent to such jurisdiction. St. Clair v. Cox, 106 U.S. 350, 1 S.Ct. 354, 27 L.Ed. 222. The abandonment of this "consent theory" in favor of the "corporate presence theory" was foreshadowed in St. Louis, etc., R. Co. v. Alexander, 227 U.S. 218, 33 S.Ct. 245, 57 L.Ed. 486, Ann. Cas.1915B, 77. The latter doctrine is stated by Mr. Justice Brandeis in Philadelphia & Reading R. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710, as follows: "A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there. And even if it is doing business within the state, the process will be valid only if served upon some authorized agent. St. Louis Southwestern R. Co. v. Alexander, 227 U.S. 218, 226, 33 S.Ct. 245, 57 L.Ed. 486, 488, Ann.Cas.1915B, 77. Whether the corporation was doing business within the state, and whether the person served was an authorized agent, are questions vital to the jurisdiction of the court. A decision of the lower court on either question, if duly challenged, is subject to review in this court; and the review extends to findings of fact as well as to conclusions of law. Herndon-Carter Co. v. James N. Norris [Son] & Co., 224 U.S. 496, 32 S.Ct. 550, 56 L.Ed. 857; Wetmore v. Rymer, 169 U.S. 115, 18 S.Ct. 293, 42 L.Ed. 682".

This statement of the applicable rule has since been consistently approved and followed. Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372; Bank of America v. Whitney Cent. Nat. Bank, 261 U.S. 171, 43 S.Ct. 311, 67 L.Ed. 594; Lumiere v. Mae Edna Wilder, Inc., 261 U.S. 174, 43 S.Ct. 312, 67 L.Ed. 596; Minnesota Commercial Men's Ass'n v. Benn, 261 U.S. 140, 43 S.Ct. 293, 67 L.Ed. 573; People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S. Ct. 233, 62 L.Ed. 587, Ann.Cas.1918C, 537; Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634;

James-Dickinson Farm Mortgage Co. v. Harry, 273 U.S. 119, 47 S.Ct. 308, 71 L.Ed. 569; Morris & Co. v. Skandinavia Ins. Co., 279 U.S. 405, 49 S.Ct. 360, 73 L.Ed. 762; Consolidated Textile Corp. v. Gregory, 289 U.S. 85, 53 S.Ct. 529, 77 L.Ed. 1047, 1049.

The parties agree that this is the well established legal rule and the controversy between them relates only to its application to the facts of this particular case. The plaintiff relies on the case of International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, while the defendant contends that the facts of this case fall within the principles stated in the subsequently decided cases of Philadelphia & Reading R. Co. v. McKibbin, supra; W. S. Tyler Co. v. Ludlow-Saylor Wire Co., 236 U.S. 723, 35 S.Ct. 458, 59 L.Ed. 808; and People's Tobacco Co. v. American Tobacco Co., supra.

■ While conceding that mere solicitation of orders is not sufficient to constitute "doing business", the plaintiff points out the following statements from the International Harvester case, supra, 234 U.S. at page 585, 34 S.Ct. at page 946, 58 L.Ed. 1479: "Here was a continuous course of business in the solicitation of orders which were sent to another state, and in response to which the machines of the Harvester Company were delivered within the state of Kentucky. This was a course of business, not a single transaction." And again, 234 U.S. at page 587, 34 S.Ct. at page 946, 58 L.Ed. 1479: "In the case now under consideration there was something more than mere solicitation. In response to the orders received, there was a continuous course of shipment of machines into Kentucky". It is suggested, if not urged, that the continuous course of business in the solicitation of orders and the flow of shipments into the State of goods in fulfillment of these orders, without anything more, would be sufficient to subject the defendant to the jurisdiction of the State court. There are a few decisions which so construe the Harvester case. American Asphalt Roof Corp. v. Shankland, 205 Iowa 862, 219 N.W. 28, 60 A.L.R. 986; Tauza v. Susquehanna Coal Co., 220 N.Y. 225, 115 N.E. 915; Halpin v. North American Refractories Co., 151 Misc. 764, 272 N.Y.S. 393; Swift v. Matthews Engineering Co., 178 App.Div. 201, 165 N.Y.S. 136. However, such an interpretation of the Harvester case has been expressly negatived by the Supreme Court. In People's Tobacco Co. v. American Tobacco Co., supra, Mr. Justice Day, who also delivered the opinion in the Harvester case, 246 U.S. at page 87, 38 S.Ct. at page 235, 62 L.Ed. 587, Ann. Cas.1918C, 537, says: "The plaintiff in error relies upon International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, but in that case the facts disclosed that there was not only a continuous course of business in the solicitation of orders within the State, but there was also authority upon the part of such agents to receive payment in money, checks and drafts on behalf of the company, and to take notes payable and collectible at banks in Kentucky; these things, taken together, we held amounted to doing business within the State of Kentucky in such manner as to make the Harvester Company amenable to the process of the courts of that State".

It thus seems settled that the Harvester case cannot be construed as holding that a continuous course of solicitation and shipment of goods into a state as a result thereof constitutes "doing business", but that there must be "something more", as was said by Judge Soper, as District Judge, in the case of La Porte Heinekamp Motor Co. v. Ford Motor Co., D.C., 24 F.2d 861.

What, then, is shown by the evidence to have been done in the instant case in addition to solicitation?

■ The plaintiff concedes that the primary duties performed by Jones for the defendant company were those of salesman and his authority as such extended only to the solicitation and transmission of orders for acceptance or rejection by the corporation at its home office in the State of Ohio. It is contended, however, that Jones performed other duties in Virginia for the defendant and that such additional activities when "taken together" with such solicitation amount to doing business in the State of Virginia. Attention is directed to the fact that Jones was listed in the Richmond City Directory as district manager of Owens-Illinois Glass Company and that said company is listed in the telephone directory as having an office in Richmond. It is also pointed out that Jones furnished the defendant with reports as to the credit standing of prospective customers on forms furnished him for that purpose, and that Jones made inquiries and collected information with that end in view; that Jones was called upon by the credit department to assist in the collection of accounts and that he actually received payments on accounts

of the defendant; that in connection, with the adjustment of claims he was instructed to secure and forward information concerning such claims, together with his recommendation. However, the evidence also shows that neither Jones nor any other person in Virginia had authority to extend credit to customers or to adjust their accounts, but that the decisions in all such matters were made by the defendant at its home office in Toledo; that the activities of Jones in the collection of accounts related exclusively to delinquent accounts; and that the occasions when he made collections, which were exceedingly rare, the payments were made by checks, payable to the order of the defendant, which were forwarded by Jones to the Toledo office.

In Davega, Inc., v. Lincoln Furniture Co., 2 Cir., 29 F.2d 164 and American Electric Welding Co. v. Lalance, etc., Mfg. Co., D.C.Mass., 256 F. 34, it was held that listings of a corporation in city and telephone directories did not constitute "doing business". The furnishing of credit reports by a salesman was held to be insufficient to support jurisdiction in the case of Stein v. Standard Oil Co., D.C.N.Y., 36 F.2d 258. In the Davega case it was expressly held that a salesman might occasionally attempt to collect overdue accounts without subjecting his company to the jurisdiction of the state court, and that even the adjustment of accounts by the agent, with the approval of the company, did not constitute "doing business". See Hilton v. Northwestern Expanded Metal Co., D.C.Ga., 16 F.2d 821, as to the effect of investigation of disputes by the agent and the collection by him of slow accounts.

It is suggested that an element to be considered in determining whether the defendant is doing business in Virginia is the fact that Jones is paid for his services a stated salary, plus a bonus, and not a commission such as is usually paid to a salesman whose only authority is to solicit orders. This fact is of slight, if any, importance. The controlling consideration in determining whether the defendant is doing business in Virginia by reason of the activities of Jones is the extent of the authority delegated to, and the duties performed by, Jones, rather than the method by which he is paid for his services.

A case strikingly similar to the instant case in many of its essential facts is that of Tignor v. L. G. Balfour & Co., 167 Va. 58, 187 S.E. 468. There Tignor brought suit in a state court against Balfour & Co., a foreign corporation not domesticated in Virginia. Process was served on Anderson, an alleged agent of the defendant. The activities and authority of Anderson in the Tignor case were approximately the same as those of Jones in the instant case. The defendant appeared specially and filed a plea to the jurisdiction. On the issue thus raised the trial court found that no business, except solicitation, was being done in Virginia, and, therefore, that Balfour & Co. was not doing business in that State in such manner and to such extent as to make said corporation amenable to process, and sustained the plea to the jurisdiction. In affirming such judgment, the Supreme Court of Appeals of Virginia said, at page 472 of 187 S.E. as follows: "A soliciting agent, in this state, for a foreign corporation, may maintain an office or place of business on which the name of such corporation appears on the doors and windows, of such place, without making the corporation amenable to service of process; but if an essential corporate function, even though slight, is delegated to such agent, or if such agent, with the permission of the corporation, exercises such authority at such office or place of business, then the corporation is amenable to process served upon such agent".

Here Owens-Illinois Glass Company delegated to Jones the exercise of none of its essential corporate functions, but all such functions were reserved to and exercised by the corporation at its home office in Toledo, Ohio. The activities of Jones in addition to those performed as salesman were merely in aid of and incidental to such primary duties, so that all of his activities when taken together amounted to nothing more than the solicitation and transmission of orders.

There remains to be determined whether Jones was such a representative of the defendant corporation that service of process upon him was legally effective to bind the company. The general principles governing the solution of this question are well stated in 21 R.C.L. pages 1348 and 1351. A valuable discussion of the character of the agency necessary to support a service of process upon an agent of a foreign corporation is had in the case of Connecticut Mut. Life Ins. Co. v. Spratley, 172 U.S. 602, 19 S.Ct. 308, 43 L.Ed. 569. See, also, Chicago Board of Trade v. Hammond Elevator Co., 198 U.S. 424, 25 S.Ct. 470, 49

L.Ed. 1111; Commercial Mutual Accident Co. v. Davis, 213 U.S. 245, 29 S.Ct. 445, 53 L.Ed. 782; St. Louis, etc., R. Co. v. Alexander, supra.

Tested by the principles laid down in the above authorities, I am of opinion that service of process upon Jones was not a valid service upon the defendant for the reason that he was not such an agent or employee of the company as might, conformably to the requirements of due process of law, be held to be representative of the corporation for the purpose of such service.

Jones was not authorized to bind the corporation in any respect whatsoever; he made no contracts, collected no money except in rare instances, had no control of credits and adjustment of accounts, and in all of his actions was subject to direction from the home office in Toledo, Ohio.

An order may be presented after notice quashing the service of process and setting aside the service of notice and summons.