CIRCUIT COURT OF PRINCESS ANNE COUNTY

Thomas C. Sawyer, Jr.

v.

Hunter Engineering Co. and
McLean Auto Supply Corp.

April 9, 1960

Case No. 4119

By JUDGE HENRY W. MacKENZIE, JR.

Testimony taken on the motion to quash the service of process against Hunter Engineering Company, in this case, discloses that Hunter Engineering Company is a Missouri Corporation which manufactures wheel alignment equipment and other automotive repair and servicing machinery in its plant in Missouri. It is represented in Virginia by two "manufacturer's agents," who have mutually exclusive territory, and who take orders from jobbers which they forward to the principal office of the manufacturer in St. Louis for acceptance or rejection. When certain of the equipment is sold by the jobber, the manufacturer's agent assists or supervises its installation, for which he is authorized by Hunter to make a charge, but in practice never does so. Hunter has no officers or agents in the State, other than two "manufacturers agents"; has no offices, warehouses or plants, maintains no bank account or telephone listing; owns no property, and never engages in any activity other than the sale and installations of its equipment as above pointed out. The "manufacturers agent" has no authority to accept orders, is in no way directed by Hunter in the manner of his contact with jobbers and bears his own expenses and oper-

ates on a strictly commission basis. There was also other evidence of the details of their operations not recited in the foregoing condensed statement of the fact, but these are trivia which in my opinion, do not bear materially on the legal point involved.

This suit was instituted by the plaintiff Sawyer in Princess Anne County against Hunter Engineering Company and McLean Auto Supply Corporation, the jobber through which the item was sold, for alleged personal injuries suffered by him as the result of defects in an item of equipment manufactured by Hunter and installed in a garage in Princess Anne County. Service was had on Hunter by delivering the process to the Clerk of the State Corporation Commission under section 8-60 of the Code of Virginia, and Hunter has moved to quash this service on the grounds that it cannot be reached by the process of the Virginia court.

The issues are whether the defendant Hunter has, by its activities, subjected itself to the jurisdiction of the Virginia court, and, if so, whether the Virginia statutes authorize service on a foreign corporation engaged in activities of the nature above outlined.

The first question is one of due process under the 14th amendment of the Constitution of the United States, and the difficulties attendant to a correct decision in this case arise from a changed and changing interpretation by the Federal Courts of the due process clause as applied to foreign corporations and their amenability to state process.

The basic constitutional principal, as enunciated in Pennoyer vs. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878), is that an in personam judgment must be founded on the court's de facto power over the defendant's presence, or, conversely, no court can constitutionally render an in personam judgment against a defendant unless it has jurisdiction over his person. The old leading case on the application of this doctrine to foreign corporations is Green vs. C.B. & Q. Railroad, 205 U.S. 530, 51 L.Ed. 916 (1906), in which it was held that a railroad company whose lines extended westwardly from

Chicago could not be sued in Pennsylvania by service on an agent of the railroad in Pennsylvania whose duties consisted of soliciting traffic from potential shippers in that State. The court held that solicitation only of business in a state did not constitute doing business to the extent that the corporation was present in the state, and could thus be reached by its process.

This was extended by a number of decisions into a generally understood rule that mere solicitation of business and normal acts incidental thereto by agents of a corporation did not amount in law to the corporation doing business in a state. However, it was held in International Harvester Company vs. Kentucky, 234 U.S. 586, 58 L.Ed. 1482 (1914), that if there were other activities in addition to solicitation of business, the corporation thereby subjected itself to the state's process. Much litigation has subsequently ensued over the factual question of whether a particular corporation was merely soliciting business and performing acts incidental thereto, or whether it was also engaged in other activities which would bring the concern within the jurisdiction of a state court.

In 1945, the Supreme Court of the United States in the case of International Shoe Co. vs. Washington, 326 U.S. 310, 90 L.Ed. 95, 161 A.L.R. 1057 (1945), undertook to establish a new test for due process under such conditions. On a state of facts in which a Delaware Corporation sold its products through sales solicitors in the State of Washington, who could only solicit orders and forward them to the corporation's principal office where they were accepted and the merchandise shipped in inter-state commerce, the State of Washington levied an unemployment tax on the corporation growing out of the activities of the solicitors, and sued in a Washington State court to recover it, notice being sent by registered mail to the corporation's home office. The corporation insisted that its activities did not in fact constitute doing business within the body of case law which had grown up to the effect that mere solicitation, with only slight activity incidental thereto, would not render

the corporation liable to state process. The Supreme Court of the United States, instead of testing the facts of the particular case against those standards, reviewed a great number of prior decisions touching the point in issue, expressly discarded the old theory of the corporate "presence" and reached the conclusion that "The criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative." It states "Whether due process is satisfied must be handled rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." and then lays down "To the extent that a corporation exercises the privilege of conducting within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and so far as these obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit or to enforce them can, in most instances, hardly be said to be undue." It then proceeds to hold "It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional concept of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there."

As may well be expected, there has been a volume of state and federal litigation since this decision turning upon the sufficiency of the contacts or ties with the state of the forum and the conception of fair play mentioned in the decision. The general result has been to hold foreign corporations subject to state process in a great many cases where the old constitutional concept held that it could not be done.

The current rule of the Federal Courts may be now stated that it is not a violation of due process where the solicitation of sales has been systematic and

continuous to permit a foreign corporation to be sued in such state on obligations arising out of or connected with such sales or activities.

Even though Virginia is not prohibited by the Federal Constitution from entertaining such suits in its courts, this action may still not be maintained unless the Virginia law so authorizes. There are two code sections bearing directly upon this point. Section 13.1-119 provides the penalties upon a foreign corporation which has failed to be admitted to this state under section 13.1-102 et seq. when such admission is required. This section further provides that the directors, officers or agents shall be jointly or severally liable for any contracts made or to be performed in this state and any torts committed in this state, and suits against it may be begun by serving process on any of the designated officials, or if none can be found, on the Clerk of the Corporation Commission.

Section 8-60 provides that if a foreign corporation doing business in this state or a foreign corporation transacting affairs in this state has no registered agent, process of notice may be served on any agent of such corporation in the county or city in which he resides, or his place of doing business, or on the Clerk of the Corporation Commission, and service when duly made may constitute sufficient foundation for a personal judgment against such corporation when other requisites exist.

There have been two Virginia cases bearing upon the point here in issue. In Tignor vs. Balfour, 167 Va. 58, decided in 1936 (which was prior to the International Shoe Co. case), Justice Hudgins then reviewed the existing authorities and came to the conclusion that solicitation of business within a state by a registered agent in that state would not permit a suit against the corporation in that state, unless the agent had additional authority to perform "essential corporate functions" within the state. This decision was based entirely upon the interpretation of the due process clause of the Federal Constitution as then

promulgated by the United States Court, and did not undertake to determine whether Virginia had any law which attempted to reach such foreign corporations or not. The later decision of the United States Supreme Court in the International Shoe case has the effect of eliminating the Tignor case as present authority on this court.

Under a state of facts somewhat similar to those in the case at bar, so far as the corporation's activity and modus operandi in Virginia are concerned, the Supreme Court of Appeals held in Carnegie vs. Art Metal Construction Co., 191 Va. 136 (1950), that the corporation was not doing business in Virginia and there was no way to maintain jurisdiction in this state without proof of that fact.

There are two reasons why the Carnegie case is not controlling in the situation now before this court. In the Carnegie case the plaintiff was suing for damages for illegal cancellation of his contract with the defendant, while in the case at bar the action is founded on a defect of the equipment sold to the plaintiff. The doctrine of "fair play" enunciated in the International Shoe case may or may not reach the breach the dealership contract such as presented in the Carnegie case, but the case set forth in the notice of motion here certainly comes with the rule "So far as those obligations arise out of or are connected with the activities within this state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue". It would hardly have been disputed if this equipment had been sent into Virginia and not paid for that Hunter could have resorted to the courts of Virginia to collect the purchase price; and any system of "fair play" would also hold it to be responsible in the same forum for any defects in the equipment so sold.

Furthermore, the plaintiff in the Carnegie case rested his position entirely upon section 38-48 of the 1942 Code of Virginia (which is substantially the same as section 13.1-119 of the present code) so far as the

jurisdictional aspect of the suit is concerned. This is the section which provides that if a corporation does business in this state without having qualified so to do, it renders itself subject to suit in the courts of this commonwealth in the manner provided. The plaintiff's case was based entirely upon whether the corporation's activities brought it in violation of the law requiring it to qualify to do business in Virginia, for such was the situation being dealt with in section 38-48 of the Code of 1942. The International Shoe case was not mentioned in the court's opinion, and a review of the briefs filed by counsel on both sides show that it was not cited to the court.

If it were the policy in Virginia to limit suits in its courts against foreign corporations which had failed to qualify to do business in Virginia when the law required that they should, the old section 3848 and the current 13.1-119 would have been all the statute law necessary. However, we also have section 8-60 providing for service of process on the Clerk of the Corporation Commission for any foreign corporation doing business or transacting affairs in this state. The presence of this section shows that it is not the policy of this state to limit suits in its courts against foreign corporations only to those who have failed to qualify when they were supposed to. Moreover, this section does not simply refer to foreign corporations "doing business," but also includes those "transacting affairs."

This court therefore concludes that neither the Tignor nor the Carnegie cases have held that a foreign corporation can be reached in a Virginia court by service of process on the Clerk of the Corporation Commission, only where it has unlawfully failed to qualify to do business in this state. It further holds that the defendant Hunter is amenable to the process of this court in the case at bar.

The same conclusion has been reached in 1959 by the Circuit Court of Appeals for the Fourth Circuit in Wescott-Alexander Incorporated, 264 F. 2d 853. It is clearly the law now that a foreign corporation does

not have to be "doing business" in this state to the extent necessary to require it to qualify with the Corporation Commission in order for such corporation to be subject to suit in a Virginia Court under the Constitutional limitations set forth in the International Shoe case.

The motion to quash the service as to Hunter Engineering Company is therefore overruled.