# CIRCUIT COURT OF THE CITY OF ROANOKE

Hitachi Sales Corp. of Am.

v.

Burl F. Long

June 11, 1982

Case No. Law 81-0829

By JUDGE JACK B. COULTER

*The issue presented by the defendant's motion to require the plaintiff, a foreign corporation, to file a certificate of authority.*

The issue presented by the Defendant's Motion to dismiss this action because of the failure of the Plaintiff, a California corporation, to file a certificate of authority as the Defendant claims is required by § 13.1-119 of the Code of Virginia of 1950, brings into sharp conflict two competing policies: that of a state to require non-residents who seek the aid of its Courts to contribute through license fees, and taxes, to the general costs of maintaining those Courts, as state residents are required to do, versus the Constitutional claim that interstate commerce should not be burdened by state taxation, licensing, and regulation.

## Summary of Proceedings to Date

The Plaintiff filed its Motion for Judgment on December 30, 1981, claiming that the Defendant was indebted to it in the amount of $39,090.10 plus interest from March 31, 1980, and a reasonable attorneys' fees due on an open account allegedly guaranteed personally in writing by the Defendant. The Defendant, after being served on January 4, 1982, filed a Motion for a Bill of Particulars on January 25, 1982. The Plaintiff filed its response thereto, on January 28, 1982 and moved for entry of Judgment against the Defendant pursuant to Code § 8.01-28 which authorizes such Judgment on the failure of the Defendant to file a counter-affidavit of denial. On February 24, 1982, the Court denied the Plaintiff's Motion to Dismiss, and took under advisement the Defendant's Counter Motion to Dismiss on the alleged failure of the Plaintiff to comply with Code § 13.1-119. The Defendant's Motion had been filed on February 17, 1982. An evidentiary hearing limited to the Defendant's Motion was set for April 8, 1982, with April 1, 1982, being established as the cut-off date for any discovery relative thereto. The parties thereafter exchanged discovery efforts, including interrogatories, and the requests for admissions. After the evidentiary hearing on April 8, 1982, on the sole issue of the applicability of § 13.1-119, the Court requested briefs from counsel which were submitted by the Plaintiff by letter dated April 13, 1982, and by the Defendant by letter dated April 16, 1982. Thereafter, the Court requested further briefing by its letter of April 22, 1982. The Defendant submitted its additional memo by its letter of May 1, 1982, and the Plaintiff by its letter of May 10, 1982.

## The Issue Restated and the Facts at Bar

The statute upon which the Defendant relies in support of his Motion to Dismiss provides in pertinent part:

> No foreign corporation transacting business in this State without a certificate of authority shall be permitted to maintain any action, suit

or proceeding in any court of this State, until such corporation shall have obtained a certificate of authority. . .

The issue, then, is whether or not the Plaintiff was "transacting business" in this state within the meaning of Code § 13.119 and other relevant statutes. The Defendant began selling the Plaintiff's products in 1977 through his company, J & B Research Associates, Incorporated, in Blacksburg. He bought directly from the Defendant, although other dealers placed orders through Harvey's Warehouse, another independent distributor, in Richmond. In 1981, Hitachi had sales totalling $1,942,000.00 in Virginia concentrated through ten dealers. Apparently, the Plaintiff does not maintain any office or warehouse in Virginia although it does have a distributor at Mechanicsville who also distributes products other than Hitachi's. Hitachi has no employee who lives in Virginia but does some advertising through dealers, particularly through brochures and displays, although it claims it has no control over such dealer advertising. Hitachi's television and radio advertising is done nationally, not through any Virginia television or radio stations. Hitachi's employees have attended bankruptcy court hearings in Roanoke and have filed proofs of claim in bankruptcy. The Plaintiff also has other customers in Virginia who owe it money. It offers sales training to dealers and their employees in Virginia, sponsors contests in which dealers and dealers' employees can win prizes for sales of Plaintiff's products, and offers training for personnel who repair and service Plaintiff's products in Virginia. Hitachi has also filed financing statements in the Clerk's Offices of the City and County of Roanoke, and Montgomery County, claiming security interests in its products included in the inventory of two of its dealers: J & B Research Associates, Incorporated, and Southern Electronics, Incorporated.

### Review of the Law

Many states apparently have statutes similar to Virginia's § 13.1-119 which, at least as analyzed in

36 Am. Jur. 2d, *Foreign Corporations*, § 282, p. 285, "must be given due effect."

> Such statutes must be given due effect, and while they do not, of course, prevent a foreign corporation which has not done business in the state from bringing suit in the state courts, they do, as a general rule, render the contracts of noncomplying corporations doing business in the state unenforceable in the courts of that state, at least until compliance with the statutes.

What then, are the guidelines by which the transaction of business in a given state is to be measured? What acts or conduct of a foreign corporation will constitute the doing of business in the forum state? Perhaps the most definitive pronouncement insofar as Virginia is concerned is set forth in Judge Warriner's decision in *Continental Properties, Inc.* v. *The Ullman Company et al.*, 436 F. Supp. 538 (E.D. Va. 1977). In this case the Defendant, Ullman Company, a New York corporation, who was engaged in the business of the manufacture and sale of various household items, decided to move its manufacturing operations to Virginia. It entered into a number of preliminary negotiations and agreements in preparation for such a move, including a contract to purchase a building site, the employment of an architectural firm to prepare plans for the construction of the plant, negotiations with a Suffolk contractor to build the plant and efforts to obtain financing. Realizing the need for local coordination, the Defendant engaged the Plaintiff, a real estate development and investment firm for such purpose. The Plaintiff performed its part of the agreement with the Defendant, but the Defendant aborted its plans causing the Plaintiff substantial damages. It brought suit against the Defendant corporation and its officers and directors personally for failure to procure a certificate of authority from the State Corporation Commission as allegedly required by § 13.1-119. The issue to be resolved in determining the personal liability of the officers and directors was whether or not this foreign corporation was "transacting business" in this state.

The Court first recognized the difficulty in defining the terms, observing:

> In view of the great variety of possible fact situations, it is difficult to formulate a precise, consistent definition of the term, "transacting business" in the foreign quali- fication sense. Nevertheless, an analysis of what the Virginia courts have considered to be significant contacts narrows the possible interpretations of the phrase.

Judge Warriner then turned to Judge Hudgins's opinion in *Tignor* v. *L. G. Balfour and Co.*, 167 Va. 58, 62 (1936):

> The term "doing business" has a legal significance which differs with the type of case to which it is applied. It is quite possible that a foreign corporation may be held to be "doing business" in a given State for one purpose and not "doing business" for another. Three general classes of cases involving "doing busi- ness" are found in the reports, viz: (1) those involving service of process upon a foreign corporation; (2) those involving taxation; (3) those involving domestication or qualification under statutes regulatory of foreign corporations. Many of the cases of the second and third classes are primarily concerned with the nature and character of business done, that is, whether the business is interstate, and hence beyond the power of the state to tax or regulate. In process cases that feature is not determina- tive. [citations omitted.]
>     The legal tests for determining whether or not the foreign corporation is "doing business" in a state, differ as the case falls within one or the other of these classifications, and precedents dealing with one class are of little value in those instances when it is sought to apply them to another class.

In *Tignor*, incidentally, which involved a service of process case, the court held that the actions of a soliciting agent, who was paid on a commissions basis only, in putting the foreign corporation's name on his windows and doors, did not constitute the doing of business by the foreign corporation.

Judge Warriner next observed in *Ullman* that the issue confronting him fell within the third class regarding domestication or qualification. Precedents dealing with that particular class, he reasoned, must be sought in order to impose the applicable test. Reference was then made in footnote 5 to five Virginia cases which will be hereinafter analyzed. They were: *Rock-Ola Manufacturing Co.* v. *Wertz*, 249 F.2d 813 (4th Cir. 1957); *Thaxton* v. *Commonwealth*, 211 Va. 38 (1970); *Western Gas Construction Company* v. *Commonwealth*, 147 Va. 235 (1927); *Knights of the Ku Klux Klan* v. *Commonwealth*, 138 Va. 500 (1924); *Goldsberry* v. *Carter*, 100 Va. 438 (1902).

Judge Warriner, rejecting the Plaintiff's argument that the test applying that class of cases involving service of process on a foreign corporation should be applied, then noted that a much stronger showing of in-state activities is required in order to invoke the sanctions of corporate qualifications statutes then is required either to subject a foreign corporation to local taxation or to service of process. He relied upon *Rochester Capital Leasing Corporation* v. *Sprague*, 474 P.2d 201 (1970), in which the Court held:

> It is apparent from an analysis of the decisions concerning the doing of business question that generally the courts require a much stronger showing of in-state activities in order to invoke the sanctions of corporate qualification statutes than is required to subject the foreign corporation to local taxation or to state court jurisdiction through service of process.

> With the foregoing in mind, we emphasize that the question before this Court is not whether the facts would have justified a finding that plaintiff foreign corporation was doing or transacting business in Arizona sufficient

to support in personam jurisdiction, or sufficient to uphold the validity of the imposition of a tax. Rather, as stated above, a much stronger showing of in-state contacts is required when the question before the court is whether or not a corporation's activities fall within the proscription of a corporate qualification statute.

Judge Warriner then went on in his decision to analyze the activities of the Defendant, Ullman Company, being obviously influenced that those activities in Virginia were not associated with the primary business of Ullman. They were only "acts preliminary to doing business," he pointed out. The manufacture and sale of household products made of vinyl and styrene was the Defendant's "business" and the suit had nothing to do with either. The Court held:

Entering into a purchase agreement for the sale of land to be used as a future manufacturing site does not constitute "transacting business" within the statutory meaning of §§ 13.1-102, 13.1-119.

and further,

Had Defendant Ullman been in the business of developing manufacturing sites instead of the business of manufacturing household items a different result might be reached.

The thrust of this decision and the principles it establishes are:

1. That the term "doing business" has a legal significance which differs with the type of case to which it is applied.

2. A much stronger showing of in-state activities is required in order to involve the sanctions of corporate qualification statutes than is required to subject a foreign corporation to local taxation or to service of process.

3. A foreign corporation which undertakes activities in preparation to moving in to the state, but activities which are not a usual part of its normal business, is only engaged in "acts preliminary to doing business and is not transacting business within in the meaning of Section 13.1-119".

But the case at bar does not involve "acts preliminary to doing business"; and, hence, helpful as *Ullman* is for broad and general principals, further analysis is required.

*Rock-Ola Manufacturing Corporation* v. *Wertz*, 249 F.2d 813 (4th Cir. 1957), cited by Judge Warriner in *Ullman*, although a federal decision, sheds further light on the issue. Rock-Ola, a Delaware corporation with a plant and offices in Chicago, brought suit against one of its Virginia dealers to recover the balance of $38,286.98 claimed to be due for merchandise. The Defendants moved to dismiss on the grounds that the Plaintiff had failed to obtain a certificate of authority to transact business in Virginia. The trial court sustained this motion, being of the opinion that the Plaintiff was doing business in Virginia and accordingly held that it was subject to the statutory bar. On appeal the Fourth Circuit reversed. Rock-Ola manufactured and sold "juke-boxes" and accessories. It had some forty distributors of its equipment throughout the country. but it had no office in Virginia, no employees within the state, no telephones listed in its name, owned no real property and maintained no warehouse. It did, however, furnish its Virginia distributors with business cards and truck decals to be used as advertising matter (although the name Rock-Ola was not to be included). On occasions Rock-Ola would send a field engineer into Virginia to instruct the Defendant's repairmen in the repair of Rock-Ola equipment. All machines were bought by the Defendant F.O.B. Chicago, although occasionally goods were sent on consignment. Following a customary practice, the Defendant sold some juke boxes to operators on conditional sales contracts, assigning them to the Plaintiff so that technically the Plaintiff was the title holder of some of the machines in Virginia. Furthermore, when delinquencies accumulated, Rock-Ola's representatives came into Virginia to bring about a reduction in these debts.

None of Rock-Ola's money was invested in the Defendant's repair enterprise and it shared in none of the losses or profits, nor did it participate in any of the details of the repair operation. It would, however, on occasion ship repair parts directly to machine operators when so requested.

The court concentrated its analysis on whether or not a principal-agent relationship had been created by the conduct of the parties. It observed:

> Business may be done by a foreign corporation in one of two ways. It may engage the service of a local agent, whose acts may constitute the doing of business by the principal, though the act of appointing the agent is itself not sufficient to constitute doing business. Or, the foreign corporation may do such acts on its own part as amount to doing business.

Relying heavily on *Carnegie* v. *Art Metal Construction Company*, 191 Va. 136 (1950), the court held that the existence of any agency relationship had not been established. Taking assignments of conditional sales contracts, the court observed, was a debtorcreditor relationship, rather than agency. The consignment of goods might suggest agency, but the court concluded:

> We have found no Virginia case on the question of shipments on consignment constituting the "doing of business". The general rule, however, is that such shipments do not amount to "doing business" by the foreign corporate consigner. Once the goods have reached the consignee, it is generally considered that any business done in regard to them is that of the consignee. (authorities cited)

And finally, the court addressed the sending of representatives by the Plaintiff into the state to handle delinquent accounts:

> Sending agents into the state to collect debts owing to the assignee, also does not constitute

doing business, the collection being incidental to the assignment, the acceptance of which was not the doing of business (authorities cited).

Having thoroughly analyzed each feature of the Defendant's activities in Virginia, the court concluded:

[W]e conclude that neither what Rock-Ola did itself nor what it did through the distributor, amounted to doing business in the State. And viewing all such activities together we hold that in their totality they were not sufficient to subject the corporation to the qualifications statute, and so, failure to qualify will not bar the corporation from maintaining this suit.

The other Virginia cases cited by Judge Warriner in footnote 5 of the *Ullman* decision contribute little to the overall question although limits to the broad spectrum of the concept of "doing business" is somewhat defined. In *Thaxton* v. *Commonwealth*, 211 Va. 38 (1970), the court held that Koscot Interplanetary, Inc., a cosmetic firm out of Florida, was doing business in the state so as to subject its agent, Thaxton, to the penalty of a fine for failure to procure the certificate of authority under § 13.1-119. Although Koscot called Thaxton an independent contractor, the facts clearly showed him to be an agent. Koscot scheduled meetings in the state to promote the sale of distributorships, assigned speakers for its "Golden Opportunity Meetings", provided formats for activities at the meetings, financed in-state schools for training its distributors and showed its distributors as part of its corporation structure on its organizational flow-charts. Koscot had the right to control and the power to discharge its so-called independent contractor, the usual marks of the master-servant relationship, and hence the label was not controlling. The court was satisfied that Koscot was doing business in the state and taking an active part in directing the promotion of the sale of wholesale distributorships, and hence the fine was upheld.

Similarly, in *Western Gas Company* v. *Commonwealth*, 147 Va. 235 (1927), the Court held that the foreign corpora-

tion was doing business in the state and hence subject to a fine for not first having obtained a license under Section 3847 of the Code of 1919 when it did more than merely sell a water gas generator to the City of Richmond, having shipped it from its home office in Indiana. The installation required, in addition to the assembling of the metal apparatus, lining the three units with fire-brick. It took three months to complete the job and local laborers were employed under the supervision of experts from the home office. The sale of the equipment was an incident to the construction job, the court reasoned, rather than the construction being an incident of the sale.

To the same effect was the holding in the *Ku Klux Klan* case, 183 Va. 500 (1924). The court held that the acts of the Klan in soliciting members, organizing lodges, distributing its regalia, collecting its fees, and making such contracts as were involved in or incidental to these acts, were done within the State of Virginia under the protection of its laws and hence it had to file its certificate of authority. Doing business, the court held, was not confined to commercial or manufacturing functions only but applied to non-profit, "patriotic" and benevolent organizations as well who exercised their corporate functions in the state.

But in *Goldsberry* v. *Carter*, 100 Va. 438 (1902), the court found that making a contract out of the state to buy land within the state was not doing business within the meaning of § 1104 of the Code then in effect so as to render a director of the company personally liable for corporate debts. The court pointed out:

> the courts of this country have generally, it seems, in construing statutes similar to ours, held that the object of such statutes is to forbid not the doing of a single act of business in the state, but the carrying on of business by a foreign corporation without having complied with the provisions of the statute. . .

The court then reasoned that if the doing of a single

act of business in the state was not doing business within the meaning of the statute, then:

> [C]learly making a contract out of the state by which title to a tract of land is acquired by a foreign corporation, is not doing business within the meaning of our statute. . .

### Other Cases and Authorities
### Cited by the Plaintiff

The Plaintiff has cited another Virginia case, *Dalton Adding Machine Company* v. *Commonwealth*, 118 Va. 563 (1916), which was not included in Judge Warriner's footnote 5. Though the language in this case which the Plaintiff has quoted supports his argument, the holding does not. Hence, when the Plaintiff concludes on the third page of his unnumbered Memorandum submitted in *Aeolian Pianos, Incorporated* v. *Larry W. Garst et al.* that in *Dalton*:

> the State Corporation Commission, the Supreme Court of Virginia and the Supreme Court of the United States were decidedly of the opinion that such activities did not constitute transacting business in Virginia with the meaning of the statutes,

he has misstated the Court's final decision.

Dalton was an Ohio corporation doing as much as $18,000.00 worth of business a year in Virginia. Most of its sales were consummated by an agent in Virginia exhibiting a sample machine and taking an order which the home office would fill, shipping whatever was ordered either directly to the customer or to the agent for delivery to the customer. Other sales, however, were concluded after a machine was left on trial with the customer who, if satisfied, would place an order for the identical machine. The company also kept parts and supplies on hand in Richmond, entered into contracts to keep machines it sold in repair for two years (later reduced to one year) after the sale. The company also rented machines. All sales, however, were subject to final approval at the home office and it was this point, the company urged,

which made it an interstate transaction protected by the commerce clause of the U.S. Constitution from undue burdens by state regulations. Citizenship of the parties does not determine the question, the court held, but the real character of the transaction should be ascertained. After analyzing numerous authorities, the Court concluded:

> A foreign corporation has the unquestionable right to so limit and conduct its business in this state as to keep the same strictly within the accepted meaning of interstate commerce, and when it does so, no license tax can be imposed upon it. But it seems to us in this case that the effort to escape the tax has been such a conspicuous and dominant feature in the course of business and so plainly marked by irregular and unusual practices, explainable only on the theory that they were intended to place an artificial interstate aspect on a portion of the business, that the corporation has not only laid itself liable to a just suspicion, but has thereby created a presumption not rebutted by any evidence against the good faith of its claim to immunity.

*Dalton* was subsequently affirmed by the U.S. Supreme Court. *See* 246 U.S. 498, 38 S. Ct. 361, 62 L. Ed. 851 (1918).

The Plaintiff also relies on the relatively recent Supreme Court case of *Allenberg Cotton Company, Inc.* v. *Pittman*, 419 U.S. 20, 42 L. Ed. 2d 195, 95 S. Ct. 260 (1974) involving a Mississippi statute virtually identical to § 13.1-119. A Tennessee cotton merchant contracted with a Mississippi cotton farmer for the purchase of the farmer's future crop, to be delivered to the Tennessee merchant's account at a local warehouse in Mississippi. When the farmer failed to perform, the merchant brought an action for damages and injunctive relief in Mississippi. The contract had been negotiated on the Tennessee merchant's behalf by an independent Mississippi broker who, while not authorized to execute contracts for the merchant, followed the practice of telephoning the necessary information to the merchant at its Tennessee office where a

contract was prepared and signed by the merchant and forwarded to the broker to obtain the farmer's signature. The Tennessee merchant had no office or warehouse in Mississippi and no employees soliciting business or otherwise operating in Mississippi on a regular basis. The cotton purchased by the merchant in Mississippi was delivered to a local warehouse for sorting and classifying prior to its shipment in interstate or foreign commerce pursuant to the merchant's contracts for sale of the cotton to its customers outside the state. The Supreme Court of Mississippi held that the Tennessee merchant could not recover because he had failed to obtain a certificate of authority to do business in the state, his transactions within the state being wholly intrastate in nature. The U.S. Supreme Court, however, reversed in an 8 to 1 decision holding, in part, that the merchant's contacts with Mississippi did not exhibit the sort of localization or intrastate character required in situations where a state seeks to require a foreign corporation to qualify to do business.

Plaintiff also refers to the Model Business Corporation Act upon which the Virginia statutes are apparently based. The fact, however, that § 106 of the Model Business Corporation Act contains a number of examples of business activities that are not to be considered as doing business, which are not included in the corresponding Virginia statutes (§§ 13.1-102.1 and 13.1-102.2) would lend persuasive and logical support to the argument that their omission is significant. In other words, if Virginia's statutes do not include the declaration that "effecting sales through independent contractors" shall not be considered the doing of business in this state, as is provided in Section 106(e) of the Model Business Corporation Act, then ergo "effecting sales through independent contractors" should be considered the doing of business in this state.

### The Defendant's Authority

The Defendant has cited only one case in support of his position, *Moore v.Northern Homes of Pennsylvania, Inc.*, 80 F.R.D. 278 (W.D. Va. 1978). But in that case the foreign corporation (Northern Homes) did not deny that it was transacting business in Virginia. The first

issue to resolve was whether or not the Plaintiff had waived his right to plead the noncompliance by filing his reply to Northern's counterclaim, submitting interrogatories and requests for production of documents and admissions. Judge Dalton held that the requirements of § 13.1-119 could not be waived but, on the authority of *Video Engineering Company* v. *Foto-Video Electronics, Inc.*, 207 Va. 154 (1957), and *Phlegar* v. *Virginia Foods, Inc.*, 188 Va. 787 (1949), he gave the counterclaiming Defendant thirty days to effect compliance with that statute. The statute does not render the cause of action illegal, Judge Dalton held, but only potentially denied the claimant access to the Courts. He quoted Justice Spratley in the *Video Engineering Company* case:

> It is not the right to begin the action, but the right to maintain it, that is withheld for failure to comply with its terms. It takes no right away from the offending party after compliance. When its terms are met, the barriers are removed.

The *Moore* case simply does not address the point at issue in the case at bar.

### Conclusion

Summarizing, then, as Judge Warriner noted in *Ullman*, it is difficult to formulate a precise, consistent definition of the term "transacting business" because of the great variety of possible fact situations. Nonetheless, a much stronger showing of in-state activities is required before the sanctions of corporate qualifications should be invoked than is required to subject the foreign corporation to local taxation or service of process. There should be "significant contacts" by the foreign corporation within the forum state: acts "preliminary to the doing business" is not enough. There should be established either a master-servant or principal-agent relationship between the foreign corporation and the local dealer or distributor or the acts of the foreign corporation on their own must amount to doing business. The assignment of conditional sales contracts to the foreign corporation,

thereby making it the technical title holder of property within the forum state, is not enough, nor is the consignment of goods, nor attempting to collect debts, nor having a soliciting agent who is paid a commission, nor single isolated acts not amounting to the "carrying on of the business." The totality of all the in-state activities must be weighed against the supremacy of the commerce clause of the national constitution.

Against these guidelines, the totality of Hitachi's in-state activities in the case at bar, there being no principal-agency relationship established, does not measure up to the transaction of such business within the State as contemplated by § 13.1-119. Accordingly, the Defendant's Motion to Dismiss is denied.